**ALABAMA ELECTRIC COOPERATIVE, INC., a Foreign Corporation, Plaintiff-Appellee,**

v.

**FIRST NATIONAL BANK OF AKRON, OHIO, et al., Defendants-Appellants.**

No. 81–5572.

United States Court of Appeals, Eleventh Circuit.

Sept. 3, 1982.

Jerry R. Linscott, Baker & Hostetler, Denis L. Durkin, Orlando, Fla., for defendants-appellants.

Clinton E. Foster, Panama City, Fla., George C. Douglas, Jr., Andalusia, Ala., for plaintiff-appellee.

Before TUTTLE, KRAVITCH and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The primary issue in this appeal concerns the right of the appellee, Alabama Electric Cooperative, Inc. (AEC), an Alabama corporation, to exercise the power of eminent domain under Florida law over property located in Florida and owned by the appellants.

On October 1, 1980, AEC filed a petition in the Circuit Court of Washington County, Florida, seeking to condemn certain parcels of land located in Washington County to construct an electrical transmission line. The petition named, among others, the First National Bank of Akron as the fee simple owner of several of the tracts. The bank filed an answer in state court and then petitioned to remove the action to the United States District Court for the Northern District of Florida on grounds of diversity of citizenship. The district court retained jurisdiction only over the part of the case dealing with the bank's property, and remanded the remainder of the case to the state court. After an evidentiary hearing, the district court upheld AEC's authority to condemn the land. Soon thereafter, AEC discovered that the bank held only an 85% undivided interest in the affected property and that the remaining 15% was vested in the other appellants. Based on this information, AEC filed an amended petition naming David Crow, Gretchen S. Crow, John David Crow, Judith Quinn and Harold J. Quinn as additional defendants. The district court then conducted another hearing on AEC's right to condemn the Crows' and Quinns' interest in the land. Again, the district court recognized AEC's legal power to take the property, took judicial notice of the first hearing, denied the appellants' motion to dismiss, and issued an order of taking on behalf of AEC. After a trial on the issue of damages, the jury returned a verdict of $101,300.00 as compensation for the property taken. All the appellants subsequently filed this appeal.[1] Finding no error in the judgment of the district court, we affirm.

The appellants contend that the district court erred in finding that (1) AEC is entitled to exercise the power of eminent domain in Florida, (2) AEC did not violate the "central station" provisions of Florida law and (3) AEC did not abuse its discretion in locating the electrical line over appellants' land.

AEC is an electrical cooperative, organized in 1941 as a non-profit Alabama corporation pursuant to the provisions of Ala. Code tit. 18, § 32 (1940) (current version at Ala.Code tit. 37, § 37–6–2). From its inception, AEC obtained nearly all of its funding from loans authorized by the Rural Electrification Administration (REA). *See* 7

---

1. AEC filed a cross appeal on the award of compensation, but later moved to dismiss the cross appeal, which motion was granted by a panel of this court.

U.S.C. §§ 901–916, 930–940 (1980). AEC presently supplies electricity to sixteen rural electric distribution cooperatives, four of which are in the Florida panhandle, four municipalities, and two industries. Record, vol. 4, at 15–17. The source of AEC's authority to do business in Florida is found in the following Florida statute pertaining to foreign corporations:

> Any corporation organized under the laws of another state on a nonprofit or a cooperative basis for the purpose of supplying electric energy *in rural areas* and owning and operating electric transmission or distribution lines in a state adjacent to this state, shall be allowed to transact business in this state and shall have the same rights, powers, and privileges as a cooperative organized under this chapter upon the filing with the department of state of a certified copy of its charter or articles of incorporation and upon payment of the filing fee in this chapter provided.

Fla.Stat.Ann. § 425.27 (West 1973) (emphasis added). Since Florida rural electric cooperatives enjoy the power of eminent domain, see Fla.Stat.Ann. § 74.011 (1973), a foreign cooperative meeting the requirements of § 425.27 is likewise granted this right.

The first controversy centers around the meaning of the language "organized under the laws of another state ... for the purpose of supplying electric energy in rural areas ...." According to the appellants, the statute limits a cooperative's service to rural areas[2] from the time of its creation. They emphasize that neither the Alabama law under which AEC was incorporated[3] nor AEC's bylaws or articles of incorporation specifically restrict the corporate pur-

pose to rural areas. Pointing to the municipalities served by AEC,[4] the appellants challenge its status as a rural cooperative and hence, its right of eminent domain conferred by § 425.27. AEC, on the other hand, relies on the fact that the vast majority of its customers are in rural areas. It says that the absence of certain words in the Alabama statute or the corporate bylaws or articles does not determine, in the face of reality, AEC's corporate purpose. In fact, Florida law does not require the corporate purpose to be stated in the articles of incorporation. Fla.Stat.Ann. § 425.-07(e) (West 1973). In light of the testimony at the condemnation hearing, there is little doubt that AEC's customers are predominately situated in rural areas. Record, vol. 4, at 16. Moreover, AEC argues that it has been financed for the past forty years by loans from the REA, which are made to cooperatives specifically for the purpose of providing electrical energy in rural areas. *See* 7 U.S.C. §§ 901–916, 930–940 (1980).

The district court adopted this "de facto" test proposed by the appellee. The court found as a fact, based on the evidence adduced at the hearings, that it was the corporate objective of AEC to furnish electric service to rural areas. Record, vol. 2, at 455. He then concluded that AEC did meet the requirements set forth in § 425.27 and that Fla.Stat.Ann. § 425.04(4) (West 1973) authorizes a rural electric coop to serve some non-rural areas, indicating that AEC's service to the four municipalities did not deprive it of its "rural" character. This assessment of the Florida law is supported by Fla.Stat.Ann. § 425.04(4) (West 1973):

---

2. "Rural area" is defined in the statute as "any area not included within the boundaries of any incorporated or unincorporated city, town, village, or borough having a population in excess of twenty-five hundred persons ...." Fla. Stat.Ann. § 425.03(1) (West 1973).

3. Ala.Code tit. 37, § 37–6–2 (1977) (originally enacted as Ala.Code tit. 18, § 32 (1940), reads: Cooperative, nonprofit, membership corporations may be organized under this chapter for the purpose of supplying electric energy and

promoting and extending the use thereof. Corporations organized under this chapter and corporations which become subject to this chapter in the manner provided in this article are hereinafter referred to as 'cooperatives.'

4. The four municipalities served by AEC have populations in excess of 2500 persons, and are thus not "rural areas" within the Florida legislative scheme. Record, vol. 4, at 46–47.

A cooperative shall have power: ... (4) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten percent of the number of its members ....

The language of the statute allows a rural coop to serve up to a ten percent non-rural membership and certainly four municipalities are well within that limit. The appellants do not offer any other explanation or cite any cases to rebut this conclusion. In the absence of guiding Florida decisions, we are bound to follow the principle enunciated in *Kaufman & Broad Home Systems, Inc. v. International Brotherhood of Firemen & Oilers,* 607 F.2d 1104, 1108 (5th Cir. 1979), that the interpretation of state law by a federal district judge sitting in that state is entitled to deference. Consequently, we hold that § 425.04(4) does permit service to some non-rural areas.[5]

■ Based on the evidence, we cannot say that the district judge's factual findings as to AEC's corporate purpose were clearly erroneous. Fed.R.Civ.P. 52(a). Therefore, we must accept the finding that the general goal of AEC is to provide electrical energy to rural areas. Lacking guidance from the Florida courts specifically construing the "organized for the purpose of" language of § 425.27, we are left with the choice of accepting the "de facto" test proposed by AEC and adopted by the district court, or a more literal interpretation advanced by the

appellants. We are aware that Florida law generally mandates strict construction of the eminent domain statutes. *Tosohatchee Game Preserve, Inc. v. Central & Southern Florida Flood Control District,* 265 So.2d 681 (Fla.1972). Nevertheless, we do not believe that the legal analysis of the district court violates this requirement. Mindful that the interpretation of state law by a local district judge is entitled to deference, *Kaufman,* 607 F.2d at 1108, we conclude that AEC is entitled to exercise the power of eminent domain in Florida pursuant to § 425.27.

■ Next, the appellants urge that AEC's construction plans violate Fla.Stat. Ann. § 425.04(4) (West 1973). The disputed portion of that statute states:

However, no cooperative shall distribute or sell any electricity, or electric energy to any person residing within any town, city or area which person is receiving adequate central station service or who at the time of commencing such service, or offer to serve, by a cooperative, is receiving adequate central station service from any utility agency, privately or municipally owned individual partnership or corporation ....

Fla.Stat.Ann. § 425.04(4) (West 1973). The appellants contend that the proposed extension of service would offend § 425.04(4) because the member cooperatives which AEC seeks to serve by the electrical line are already receiving adequate central station service[6] from another generating source.

---

5. We also note that § 425.04(4) provides in part:

However, no cooperative shall distribute or sell any electricity, or electric energy to any person residing within any town, city or area ....

The use of the words "town, city, or area" seems to presuppose some non-rural service by a cooperative. The authorization for this non-rural service could stem from the "ten percent" language construed by the district court.

6. "Central station service" is not defined in the Florida statutes nor are we able to find any Florida cases which specifically refer to "central station service." "Person" is broadly defined as "any natural person, firm, associa-

tion, corporation, business trust, partnership, federal agency, state or political subdivision or agency thereof, or any body politic ...." Fla. Stat.Ann. § 425.03(2) (West 1973). AEC asserts that "central station service" means the retail supply of electrical energy. Viewed in this context, AEC says that the Florida statute is aimed at preventing the displacement of adequate retail electrical suppliers who serve the ultimate consumer. The appellants see no such limitation but claim that the statute applies to wholesale sales as well. In the instant case, AEC and the supplier it proposes to replace sell electric energy on the wholesale level. There are no instructive Florida cases on this point and we need not decide the issue here. However, we do note that cases construing similar

AEC responds that § 425.04(4) has no application to the facts of this case.

The right of way sought to be condemned would enable AEC to extend and improve its electrical distribution system to provide direct electrical service to four member rural cooperatives located in the Florida panhandle—Choctawatchee Electric Cooperative Inc., Gulf Coast Electric Cooperative, Inc., West Florida Electric Cooperative, Inc., and Seminole Rural Electric Cooperative, Inc. Record, vol. 4, at 17. Prior to this controversy, AEC contracted with its members to furnish electrical service, either with self-generated electricity through its own transmission system, or by wholesale purchases of electricity from other sources and transmitted through AEC's lines. By these contracts, AEC acted as an agent for its members in negotiating power supply arrangements. See Plaintiff's Exhibit 25, at 2; Brief for Appellee at 7. The four Florida rural cooperatives were members of AEC, but, before this condemnation proceeding, AEC was unable to supply electricity directly to these members. Because of this generating insufficiency, and in accordance with its responsibility as the parent cooperative, AEC arranged for wholesale power purchases for its members through Gulf Power Company, a private utility company. Record, vol. 2, at 455. Gulf Power Company contracted with each member cooperative, see Plaintiff's Exhibit 16, billing the member cooperatives directly and the members, in turn would forward the bills to AEC. AEC would then pay the amount of the invoices to Gulf Power. Record, vol. 4, at 22–23. Almost all of the power from Gulf Power was distributed to AEC's members over transmission lines owned by AEC. Record, vol. 4, at 35–36.

In this situation, AEC was obligated to provide power to its members by virtue of the membership agreement. Only if AEC could not provide power directly were arrangements made for wholesale purchases from other generators. At all times, AEC acted as negotiating agent for its members. The overriding purpose of the membership agreement was to supply electricity to members at the most economic terms available. Record, vol. 4, at 21–22. In 1977, Gulf Power Co. filed a wholesale electric tariff with the Federal Power Commission. AEC and its member coops determined that such a tariff was unreasonable and subsequently the coops were allowed to terminate their supply arrangement with Gulf Power. Record, vol. 4, at 23; Plaintiff's Exhibit 24. At this point, AEC decided to extend and improve its system to provide direct service to the Florida members, which election resulted in this condemnation action. At all times, AEC bore the responsibility of providing power to its own members. In light of these facts, we agree with the district court's conclusion that "[a]lthough a private utility generates the electricity, AEC is providing it to the cooperatives by purchasing the electricity from the private utility and delivering almost all the electricity through its distribution system. In short, AEC is only improving the way it provides electricity for those ... cooperatives." Record, vol. 2, at 455–56.

■ Finally, the appellants claim that AEC abused its discretion in the choice of the route over their property for the transmission line. All parties agree that once a condemning authority proves a reasonable necessity for the taking, the selection of particular property for its project will not be set aside absent illegality, bad faith, or gross abuse of discretion. *City of Jackson-*

language in the Rural Electrification Act, 7 U.S.C. § 901–916, 930–940 (1980), indicate that the term was meant to apply to the retail level only. *See e.g., Pub. Serv. Co. v. Pub. Utilities Comm'n,* 142 Colo. 135, 350 P.2d 543, *cert. denied, Union Rural Elec. Ass'n v. Pub. Serv. Co.,* 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50 (1960); *State ex rel. Consumers Pub. Serv. Co.,* 352 Mo. 905, 180 S.W.2d 40 (1944); *Missouri Power & Light Co. v. Lewis County Rural Elec.*

*Coop. Ass'n,* 235 Mo.App. 1056, 149 S.W.2d 881 (1941). *See also Tampa Elec. Co. v. Withlacoochee River Elec. Coop.,* 122 So.2d 471 (1960), *on remand,* 148 So.2d 732 (Fla.Dist.Ct. App.1962). A Texas court, confronted with a comparable situation, construed a similar statute to apply only to retail competition. *Upshur-Rural Elec. Coop. Corp. v. State,* 381 S.W.2d 418 (Tex.Ct.App.1964).

*ville v. Griffin*, 346 So.2d 988 (Fla.1977). The district court, after considering the evidence in both hearings, made detailed factual findings as to AEC's reasons for building the electrical line and the selection of the route over the appellants' land. Record, vol. 2, at 456–58. We have carefully reviewed the evidence and concluded that these findings are not clearly erroneous and agree with the district court that AEC demonstrated a reasonable necessity for the taking.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.