## UNITED STATES *v.* HOHRI ET AL.

No. 86–510.   Argued April 20, 1987—Decided June 1, 1987

POWELL, J., delivered the opinion of the Court, in which all other Members joined, except SCALIA, J., who took no part in the consideration or decision of the case. BLACKMUN, J., filed a concurring opinion, *post*, p. 76.

*Solicitor General Fried* argued the cause for the United States. With him on the briefs were *Assistant Attorney General Willard, Deputy Solicitor General Ayer, Roy T. Englert, Jr., Barbara L. Herwig,* and *Jay S. Bybee.*

*Benjamin L. Zelenko* argued the cause for respondents. With him on the brief were *Wallace M. Cohen, B. Michael Rauh, Ellen Godbey Carson,* and *Martin Shulman.**

JUSTICE POWELL delivered the opinion of the Court.

In this case we must decide which court—the Court of Appeals for the Federal Circuit or the appropriate regional Court of Appeals—has jurisdiction over an appeal from a Federal District Court's decision of a case raising both a nontax claim under the Little Tucker Act and a claim under the Federal Tort Claims Act (FTCA).

## I

During World War II, the Government of the United States removed approximately 120,000 Japanese-Americans from their homes and placed them in internment camps. Respondents are an organization of Japanese-Americans and 19 individuals—former internees and their representatives. They filed this action in the United States District Court for the District of Columbia, seeking damages and declaratory relief for the tangible and intangible injuries suffered because of this incident. Jurisdiction was based on, *inter alia,* the Little Tucker Act, 28 U. S. C. § 1346(a)(2),[1] and the FTCA,

---

*Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *John K. Van de Kamp,* Attorney General of California, *Warren Price III,* Attorney General of Hawaii, *Corinne K. A. Watanabe,* First Deputy Attorney General, and *Steven S. Michaels,* Deputy Attorney General; and for the American Friends Service Committee et al. by *David Kairys.*

Briefs of *amici curiae* were filed for the American Civil Liberties Union et al. by *Fred Okrand, Paul L. Hoffman,* and *Douglas E. Mirell;* and for Fred Korematsu et al. by *Dale Minami, Peggy Nagae,* and *Ruti G. Teitel.*

[1] Jurisdiction in district courts under the Little Tucker Act is limited to nontort claims not exceeding $10,000. 28 U. S. C. § 1346(a)(2). See 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3657, pp. 284–288 (2d ed. 1985). This decentralized jurisdiction was designed to " 'give all persons having claims for comparatively small amounts the right to bring suits in the districts where they and their witnesses reside without subjecting them to the expense and annoyance of litigating in Washing-

28 U. S. C. § 1346(b). The District Court concluded that all claims were barred either by sovereign immunity or the applicable statute of limitations. 586 F. Supp. 769 (1984).

Respondents appealed to the Court of Appeals for the District of Columbia Circuit. That court reversed the District Court's dismissal of certain claims under the Little Tucker Act. 251 U. S. App. D. C. 145, 782 F. 2d 227 (1986). First, the court concluded that it, rather than the Court of Appeals for the Federal Circuit, had jurisdiction over the appeal. It noted that 28 U. S. C. § 1295(a)(2) generally grants the Federal Circuit exclusive jurisdiction of appeals in cases involving nontax claims under the Little Tucker Act. But it concluded that Congress did not intend the Federal Circuit to hear appeals of such cases when they also included FTCA claims. *Id.*, at 157–158, 782 F. 2d, at 239–241. On the merits, the court concluded that the statute of limitations did not begin to run on certain of respondents' Little Tucker Act claims until 1980, when Congress created the Commission on Wartime Relocation and Internment of Civilians. *Id.*, at 171, 782 F. 2d, at 253. Chief Judge Markey, sitting by designation pursuant to 28 U. S. C. § 291(b), filed a dissent, disagreeing with the court's jurisdictional analysis as well as its decision as to the statute of limitations. *Id.*, at 174–175, 782 F. 2d, at 256–263. A petition for rehearing en banc was denied by a 6-to-5 vote. 253 U. S. App. D. C. 233, 793 F. 2d 304 (1986). Judge Bork, joined by four other judges, filed a dissent from denial of the petition, in which he disagreed with both of the court's conclusions. *Id.*, at 233–234, 793 F. 2d, at 304–313.

---

ton.'" *Id.*, at 274 (quoting *United States* v. *King*, 119 F. Supp. 398, 403 (Alaska 1954)). With minor exceptions, the Tucker Act grants the United States Claims Court jurisdiction of similar claims without regard to the amount of the claim. 28 U. S. C. § 1491(a)(1). Thus, Tucker Act claims for more than $10,000 can be brought only in the United States Claims Court. Claims for less than $10,000 generally can be brought either in a federal district court or in the United States Claims Court.

Because of the potentially broad impact of the Court of Appeals' decision and because of the importance of the jurisdictional question, we granted the Government's petition for a writ of certiorari. 479 U. S. 960 (1986). We conclude that the Court of Appeals did not have jurisdiction and therefore do not address the merits of its decision.[2]

## II

In 1982, Congress passed the Federal Courts Improvement Act, creating the United States Court of Appeals for the Federal Circuit. Among other things, the Act grants the Federal Circuit exclusive appellate jurisdiction over a variety of cases involving the Federal Government. 28 U. S. C. § 1295(a)(2). Specifically, the Act provides:

> "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—
>
> .          .          .          .          .
>
> "(2) of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1346 of this title, except that jurisdiction of an appeal in a case brought in a district court under section 1346(a)(1), 1346(b), 1346(e), or 1346(f) of this title or under section 1346(a)(2) when the claim is [related to federal taxes] shall be governed by sections 1291, 1292, and 1294 of this title."

This section establishes two undisputed propositions relevant to this case. First, the Federal Circuit has exclusive appellate jurisdiction of a case raising *only* a nontax claim under the Little Tucker Act, § 1346(a)(2). Second, the appropriate regional Court of Appeals—in this case, the Court of Appeals

---

[2] Respondents also filed a petition for a writ of certiorari, No. 86–298, seeking review of other aspects of the Court of Appeals' judgment. Because our resolution of No. 86–510 requires us to vacate the entire judgment of the Court of Appeals, we grant the petition in No. 86–298 and remand the entire case to the Court of Appeals.

for the District of Columbia Circuit—has exclusive appellate jurisdiction under §§ 1291, 1292, and 1294 of a case raising *only* a claim under the FTCA, § 1346(b).

This case presents claims under both the Little Tucker Act and the FTCA, a situation not specifically addressed by § 1295(a)(2). Resolution of this problem turns on interpretation of the second clause of this subsection, the so-called "except clause." The Solicitor General contends that the except clause merely describes claims that do not suffice to create jurisdiction in the Federal Circuit. Thus, he argues, appeals of FTCA claims must be heard in the Federal Circuit if, as in this case, they are joined with claims that fall within its exclusive jurisdiction. By contrast, respondents contend that the except clause indicates not only that FTCA claims fail to create jurisdiction in the Federal Circuit, but also that the presence of an FTCA claim renders inapplicable the Federal Circuit's otherwise exclusive jurisdiction over nontax Little Tucker Act claims.[3]

A

As always, the "'starting point in every case involving construction of a statute is the language itself.'" *Kelly* v. *Robinson*, 479 U. S. 36, 43 (1986) (quoting *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 756 (1975) (POWELL, J., concurring)). Unfortunately, as we have noted, see

---

[3] Neither the parties nor any judge of the Court of Appeals suggested bifurcating the case so that the Little Tucker Act claims would be transferred to the Federal Circuit and the FTCA claims would remain in the Court of Appeals for the District of Columbia Circuit. We agree that bifurcation is inappropriate. The language of § 1295(a)(2) discusses jurisdiction over an appeal "in a case," not over an appeal from decision of "a claim." This strongly suggests that appeals of different parts of a single case should not go to different courts. Also, at least when a case has not been bifurcated in the district court, a bifurcated appeal of the different legal claims raised in any one case would result in an inefficient commitment of the limited resources of the federal appellate courts. Cf. *Atari, Inc.* v. *JS & A Group, Inc.*, 747 F. 2d 1422, 1438–1440 (CA Fed. 1984) (en banc) (rejecting bifurcated appeals in patent cases).

*United States* v. *Mottaz,* 476 U. S. 834, 848–849, n. 11 (1986), the language of this statute does not clearly address a "mixed" case that presents both nontax Little Tucker Act claims and FTCA claims. Congress could have expressed the Solicitor General's interpretation more clearly by adding the word "solely" to the except clause, and thus provided that an appeal from a case brought *solely* under § 1346(b) should be to the regional court of appeals. Or, if Congress had intended the broader meaning of the except clause urged by respondents, it could have added a phrase akin to "in whole or in part" to the except clause, thus providing that an appeal of a case brought *in whole or in part* under § 1346(b) should be to the regional court of appeals. Because Congress employed neither of these alternatives, we are left with the task of determining the more plausible interpretation of the language Congress did include in § 1295(a)(2).

In our view, the Solicitor General's reading of the statute is more natural. Although Congress included the phrase "in whole or in part" in the granting clause at the beginning of § 1295(a)(2), it did not repeat this phrase in the except clause later in the same paragraph. The proximity of the clauses suggests that the variation in wording was not accidental. Also, in one instance the statute describes the excepted cases by reference to the basis of "the claim." See § 1295(a)(2) (providing for appeals to regional courts of appeals "in a case brought in a district court . . . under section 1346(a)(2) when *the claim* is [related to federal taxes]" (emphasis added)). This suggests that the except clause was directed at cases raising only one claim; it strains the language to apply the except clause to cases raising multiple claims, some within and some not within the except clause.

Respondents rely heavily on the wording of the preceding paragraph of the statute, § 1295(a)(1). That section provides exclusive appellate jurisdiction in the Federal Circuit

> "of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that

court was based, in whole or in part, on section 1338 of this title, except that a case involving a claim arising under any Act of Congress relating to copyrights or trademarks and no other claims under section 1338(a) shall be [appealed to the appropriate regional court of appeals]."

Like subsection (a)(2), subsection (a)(1) grants the Federal Circuit exclusive jurisdiction over cases arising under one section of the Judicial Code, but has an except clause governing certain types of cases under that section. Respondents note that the (a)(1) except clause specifically deals with mixed cases. On its face it applies only to cases raising the excepted claims "and no other claims." They argue that the failure to include the words "and no other claims" in the subsection (a)(2) except clause indicates that Congress intended a different scope for the two except clauses. Thus, in their view, the Solicitor General's interpretation requires us to read into (a)(2) the words that Congress intentionally omitted.

Although respondents' argument has some force, ultimately we are not persuaded. Neither of the proffered readings can remove the ambiguity inherent in this statute. Respondents' textual argument—based on a comparison of the language of § 1295(a)(1) with the language of § 1295 (a)(2)—is more attenuated than the Solicitor General's textual argument, that rests on the variation between the clauses of subsection (a)(2) itself. While a more carefully drafted statute would have avoided both of these problems, we find it difficult to assume that the variation within the same subsection was inadvertent.

## B

Because the statute is ambiguous, congressional intent is particularly relevant to our decision. A motivating concern of Congress in creating the Federal Circuit was the "special need for nationwide uniformity" in certain areas of the law.

S. Rep. No. 97–275, p. 2 (1981) (hereinafter 1981 Senate Report); S. Rep. No. 96–304, p. 8 (1979) (hereinafter 1979 Senate Report). The Senate Reports explained: "[T]here are areas of the law in which the appellate courts reach inconsistent decisions on the same issue, or in which—although the rule of law may be fairly clear—courts apply the law unevenly when faced with the facts of individual cases." 1981 Senate Report, at 3; 1979 Senate Report, at 9. The Federal Circuit was designed to provide "a prompt, definitive answer to legal questions" in these areas. 1981 Senate Report, at 1; 1979 Senate Report, at 1. Nontort claims against the Federal Government present one of the principal areas in which Congress sought such uniformity. Thus, Congress decided to confer jurisdiction on the Federal Circuit in "all federal contract appeals in which the United States is a defendant." H. R. Rep. No. 97–312, p. 18 (1981) (hereinafter 1981 House Report); H. R. Rep. No. 96–1300, p. 16 (1980) (hereinafter 1980 House Report).[4]

For the most part, the statute unambiguously effectuates this goal. Tucker Act claims for more than $10,000 may be brought only in the United States Claims Court. 28 U. S. C. § 1491(a)(1). Decisions of the United States Claims Court are appealable only to the Federal Circuit, not the regional courts of appeals. § 1295(a)(3). Claims for less than $10,000 (i. e., Little Tucker Act claims) may be brought either in a federal district court or in the United States Claims Court. § 1346(a)(2). These claims, so long as they are not related to federal taxes, also are appealable only to the Federal Circuit. §§ 1295(a)(2), (3). A conspicuous fea-

---

[4] The Little Tucker Act, of course, covers not only contract claims, but also other claims for money damages "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U. S. C. § 1346(a)(2). See Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 605–606, 372 F. 2d 1002, 1007–1008 (1967) (discussing noncontractual liability under the Tucker Act).

ture of these judicial arrangements is the creation of exclusive Federal Circuit jurisdiction over *every appeal* from a Tucker Act or nontax Little Tucker Act claim. Given this comprehensive framework and the strong expressions of the need for uniformity in the area, one would expect any exception intended by Congress to have been made explicit, rather than left to inferences drawn from loose language.

## C

Despite the language of the statute and the evident congressional desire for uniform adjudication of Little Tucker Act claims, the Court of Appeals inferred an exception to exclusive Federal Circuit jurisdiction in cases that include FTCA claims. In supporting the Court of Appeals' judgment, respondents rely on the statement, thrice repeated in the congressional Reports, that "[b]ecause cases brought under the Federal Tort Claims Act frequently involve the application of State law, those appeals will continue to be brought to the regional courts of appeals." 1981 Senate Report, at 20; 1981 House Report, at 42; 1980 House Report, at 34. Respondents argue that this statement evidences a congressional intent to deprive the Federal Circuit of its otherwise exclusive appellate jurisdiction over nontax Little Tucker Act claims whenever an FTCA claim is presented in the same case. We find this argument unpersuasive when viewed in the context of the legislative history as a whole.

First, the congressional Reports indicate only that Congress saw no affirmative need for national uniformity in FTCA cases, not that the perceived need for regional adjudication of FTCA claims outweighed the strong and oft-noted intent of Congress that only the Federal Circuit should have jurisdiction of appeals in nontax Little Tucker Act cases. Second, Congress specifically rejected the idea that patent and Tucker Act appeals should be decided by a "specialized

court" incapable of deciding more general legal issues.[5] The Federal Circuit decides questions arising under the Federal Constitution and statutes whenever such questions arise in cases within the Federal Circuit's jurisdiction. There is no reason to believe that Congress intended to exempt the relatively common tort questions presented by the average FTCA cases from the Federal Circuit's already-broad docket.[6] Third, if Congress thought the presence of state-law issues was sufficient to override the need for centralization of nontax Little Tucker Act claims, the except clause logically should have included all cases raising state-law

---

[5] The Senate Reports described "such an approach as being inconsistent with the imperative of avoiding undue specialization within the Federal judicial system." 1981 Senate Report, at 6; 1979 Senate Report, at 13. They also proffered a broad conception of the Federal Circuit's jurisdiction:

"[I]t will have a varied docket spanning a broad range of legal issues and types of cases. It will handle all patent appeals, plus government claims case[s] and all other appellate matters that are now considered by the [Court of Customs and Patent Appeals] or the Court of Claims—cases which contain a wide variety of issues.

"This rich docket assures that the work of the proposed court will be broad and diverse and not narrowly specialized. The judges will have no lack of exposure to a broad variety of legal problems. Moreover, the subject matter of the new court will be sufficiently mixed to prevent any special interest from dominating it." 1981 Senate Report, at 6; 1979 Senate Report, at 13.

See also 1981 House Report, at 19; 1980 House Report, at 17.

[6] There may have been a concern that Federal Circuit judges would not be familiar with questions of state tort law. But this problem is mitigated considerably by the fact that these cases are tried before local federal district judges, who are likely to be familiar with the applicable state law. Indeed, a district judge's determination of a state-law question usually is reviewed with great deference. *E. g., Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 499 (1941) (review by this Court); *Alabama Elec. Cooperative, Inc.* v. *First National Bank,* 684 F. 2d 789, 792 (CA11 1982) (review by a Court of Appeals). But see *In re McLinn,* 739 F. 2d 1395, 1400 (CA9 1984) (en banc) (*de novo* review by a Court of Appeals). It is certainly not clear that a panel of the Federal Circuit would be less competent to review such determinations than a panel of a regional court of appeals.

issues, not just cases under the FTCA.[7] But Congress did not preclude the Federal Circuit from deciding all state-law questions, or even all FTCA claims. For example, even under respondents' reading of the statute, the Federal Circuit can hear FTCA claims whenever they are joined with patent claims under § 1338. See § 1295(a)(1). That Congress allowed the Federal Circuit to hear FTCA claims in this context refutes respondents' contention that Congress demanded regional adjudication of all FTCA claims.

For these reasons, we conclude that Congress intended for centralized determination of nontax Little Tucker Act claims to predominate over regional adjudication of FTCA claims. We hold that a mixed case, presenting both a nontax Little

---

[7] The legislative development of the other claims in the except clause also supports our interpretation. As enacted, the except clause lists five types of claims. Its original version listed only two types of claims, FTCA claims and claims under § 1346(a)(1). S. 677, 96th Cong., 1st Sess., § 735(a) (1979). Under that bill, the Federal Circuit would have had exclusive jurisdiction (in addition to the jurisdiction Congress eventually gave it) over claims under §§ 1346(e) and (f), as well as tax-related Little Tucker Act claims. Subsequent amendments added these three types of claims to the except clause. Under respondents' theory, the original bill must have reflected a view that there was an affirmative need for centralization of these claims; subsequent amendments reflected a complete reversal of viewpoint to a decision that there was an affirmative harm in centralized adjudication of these claims. Thus, respondents implicitly argue that Congress originally thought that all of these claims should have been appealed to the Federal Circuit, but eventually determined not only that these claims should be appealed to the regional circuits, but also that the need for regional appeals of those claims would render inapplicable the Federal Circuit's otherwise exclusive jurisdiction over nontax Little Tucker Act claims. We think such a reversal of intent would have been reflected somewhere in the legislative history.

Our interpretation does not posit such a sharp and undocumented swing of viewpoint. In our view, Congress originally thought that appeals of these claims should be centralized. Subsequently, Congress decided that they could be adjudicated adequately in the regional courts of appeals. Nothing suggests, however, that Congress thought regional adjudication was so important as to bar centralized adjudication of mixed cases.

Tucker Act claim and an FTCA claim, may be appealed only to the Federal Circuit.

## III

We vacate the judgment of the Court of Appeals, and remand the case to that court, with instructions to transfer the case to the Federal Circuit. See 28 U. S. C. § 1631.

*It is so ordered.*

JUSTICE SCALIA took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, concurring.

I join the Court's opinion and its judgment. I do so, however, with less than full assurance and satisfaction.

There are three reasons for my concern. The first is the consequent element of further delay in the decision on the merits in a case that has roots already more than four decades old. The issue on the merits probably will be back in this Court once again months or years hence. The second is that the statute the Court is forced to construe in this case is not a model of legislative craftsmanship. Surely, Congress is able to make its intent more evident than in the language it has utilized here. It is to be hoped that Congress will look at the problem it has created and will set forth in precise terms its conclusion as to jurisdiction of federal appellate courts in mixed-claims cases of this kind.

My third reason is an administrative one. I am somewhat surprised and concerned over the fact that the Chief Judge of the Federal Circuit was designated to sit on this appeal. The jurisdictional issue, on which the case presently goes off, involves the jurisdiction of his own court as against that of the District of Columbia Circuit. In concluding to dissent, as he had every right to do—and as the Court today vindicates—the Chief Judge was forced to take a position favoring his own court's jurisdiction. The "appearance" is troubling. I wonder why what must have been a measure of embarrass-

ment for the Chief Judge was not avoided by refraining to assign him, or any other judge from the "opposite" court, to sit on this case. Unless the designation was purposeful (in order to have a panel with views of judges of both courts), one must observe that the Court of Appeals for the District of Columbia Circuit had a complement of other judges from which to fill the third seat on the three-judge panel.