906 F.2d 528
 BORDELON BROTHERS TOWING COMPANY, a Louisiana corporation,
Plaintiff-Appellee,
v.
PILING & STRUCTURES, INC., a Florida corporation, Hartford
Accident & Indemnity Company, a Connecticut
corporation authorized to do business in
the State of Florida,
Defendants-Appellants.
 No. 89-3707.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1990.
 
 William O. Birchfield, Susan S. Oosting, Martin, Ade, Birchfield & Mickler, P.A., Jacksonville, Fla., for defendants-appellants.
 Patricia K. Olney, Spielvogel & Goldman, P.A., Merritt Island, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before JOHNSON, Circuit Judge, HILL* and HENLEY**, Senior Circuit Judges.
 HENLEY, Senior Circuit Judge:
 
 
 1
 Piling & Structures, Inc. ("Piling") and Hartford Accident & Indemnity Company ("Hartford") appeal a judgment for Bordelon Brothers Towing Company ("Bordelon") after a bench trial,[1] following which on June 13, 1989, the court issued its opinion and ordered judgment for Bordelon in the amount of $41,816.40. Jurisdiction in the district court was based on diversity of citizenship of the parties. See 28 U.S.C. Sec. 1332.
 
 
 2
 This dispute arose from a commercial transaction involving the State of Florida, which contracted with Piling to remove a bridge over Indian Key Channel in Monroe County, Florida. Piling contracted with Hartford to provide an indemnity bond as required by section 255.05(1) of the Florida Statutes,[2] a part of the "Little Miller Act" ("the Act"), which establishes bonding requirements for contractors who do construction work on public projects in Florida. Piling subcontracted the job to Offshore, Inc./Lee Statler ("Offshore"), which in turn contracted with Bordelon, to provide the barges needed for the job. Pursuant to the contract between Bordelon and Offshore, Bordelon received some advance payments for rental of its barges to Offshore for September and October, 1986. Offshore, however, continued to use the barges after October, 1986, and Bordelon was unable to obtain payment from Offshore for their continued rental.
 
 
 3
 On December 12, 1986 Bordelon wrote Piling and advised it that Offshore owed it some $24,000.00 as of December 1, 1986. Acting under Piling's agreement with Offshore, Bordelon requested payment from Piling.[3] Piling refused to pay Bordelon, after being advised by its counsel that Bordelon had failed to comply with the notice requirements of section 255.05(2)[4] of the Act.
 
 
 4
 The parties agree that our standard of review in this appeal is plenary, since only issues of law are involved. See, e.g., Bailey v. Carnival Cruise Lines, Inc., 774 F.2d 1577, 1578 (11th Cir.1985).
 
 I.
 
 5
 Appellants first argue that, since Bordelon received partial prepayment for the rental of the barges, this bars it from seeking recovery under the statute. They argue the plain language of subsection (2) ("A claimant ... who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies....") precludes payment, since Bordelon has already received some monies.
 
 
 6
 Bordelon responds by arguing that the only reasonable construction of the statute is that those who have outstanding debts owed to them may look to the general contractor when the subcontractor fails to pay. Bordelon cites D.I.C. Commercial Constr. Corp. v. Knight Erection & Fabrication, Inc., 547 So.2d 977 (Fla.Dist.Ct.App.1989), which involved a claimant who received payment for work on a project and yet was also allowed to recover for subsequent, additional work on a related project, performed pursuant to a second contract.
 
 
 7
 The essence of appellants' argument is that since the Act provides an avenue for relief for those who are "unpaid," the fact that Bordelon received some payment for its work on the project--regardless of how small or in what circumstances--blocks its access to the courthouse doors, since one receiving money cannot simultaneously qualify as an "unpaid" claimant. Thus, it is without "standing" to bring the instant claim.
 
 
 8
 Counsel for appellants neither expounded on nor clarified this issue at oral argument. Indeed, in their reply brief appellants acknowledge the argument in their original brief was "not well-structured." However, the issue was not abandoned.
 
 
 9
 We see some superficial appeal in the "standing" argument, since the language of the statute could be rigidly interpreted to limit claimants to those who have received absolutely no money for the work they have done or were not fully paid in advance. However, it is also reasonable to find that those who have received some, but not all the money owed them, are "unpaid" to the extent of the outstanding debt.
 
 
 10
 Since we find the language of the statute less than clear when applied against the associated facts of this case, we attempt to determine the intent of the legislature in order to resolve this question of statutory interpretation. See Gergora v. R.L. Lapp Forming, Inc., 619 F.2d 387, 389 (5th Cir.1980); Devin v. City of Hollywood, 351 So.2d 1022, 1023 (Fla.Dist.Ct.App.1976). We believe it extremely unlikely that the legislature would consider Bordelon "paid," in the context of the statutory scheme involved here, simply because it has received some funds under a contract. Therefore, because of the remedial nature of the statute and the liberal construction which it has been given, see Gergora, 619 F.2d at 389; City of Fort Lauderdale v. Hardrives Co., 167 So.2d 339, 340 (Fla.Dist.Ct.App.1964), we hold that Bordelon is not barred from bringing this action under the "unpaid" criteria of Subsection 2. We consequently move on to the issue which we think controls this case, and upon which the parties focused at oral argument.
 
 II.
 
 11
 Appellants argue that Bordelon failed to give notice within 45 days of beginning work as required by subsection (2). See supra note 4. It is undisputed by the parties that notice is a condition precedent to recovery under the statute. See W.G. Mills, Inc. v. M & MA Corp., 465 So.2d 1388, 1390-91 (Fla.Dist.Ct.App.1985). Appellants maintain that the 45-day requirement for notice began to run on the day Bordelon commenced performing the contract, September 5, 1986, not later, when delinquency occurred or at least became apparent. They cite the following language of subsection (2): "within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work" (emphasis supplied). Like Bordelon, appellants draw our attention to D.I.C. Commercial Construction, which they argue demonstrates that timely notice was lacking here. The D.I.C. court found timely notice where a new contract was executed and the notice period began to run from the date of commencement of performance on that new contract. Since no new contract was executed in the instant case, Piling asserts that the holding in D.I.C. works against Bordelon.
 
 
 12
 Bordelon emphasizes the remedial purpose of the statute and indicates a liberal interpretation of the notice requirement is consistent with the intent of the legislature to "protect[ ] ... materialmen, laborers and the like, whose labor and materials are put onto public works projects, upon which they can acquire no lien." City of Fort Lauderdale, 167 So.2d at 340.
 
 
 13
 However, with equal fervor, appellants point out it is clear that the statute also "protects the contractor and the contractor's surety from having to account to unknown subcontractors and suppliers". Blosam Contractors, Inc. v. Joyce, 451 So.2d 545, 547 (Fla.Dist.Ct.App.1984).
 
 
 14
 In order to resolve this issue we again look to the statute to see what the language dictates. On the one hand, the statute could be read to require all claimants to serve notice upon the contractor within 45 days of day one of work on a project. However, this works a harsh result in the context of our case, where Bordelon, as far as we can determine, was not unpaid until November 1. On the other hand, and as the district court found, the language could be interpreted to require the notice period to begin to run from the date on which the claimant finds itself unpaid.
 
 
 15
 Here, we believe it is necessary for us to look somewhat beyond the statutory language in order to apply the statute to the circumstances of the case at bar. Cf. Streeter v. Sullivan, 509 So.2d 268, 271 (Fla.1987) (where provisions were "even slightly ambiguous," plain meaning rule does not apply); Bailey v. USX, 850 F.2d 1506, 1509 (11th Cir.1988) (noting that the "plain meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute").
 
 
 16
 In ascertaining the intent of the drafters of this legislation, we must assess the legitimate competing interests of two groups whom the legislature clearly sought to protect or assist in a single statutory scheme. Conceding the authors of the statute may not have envisioned Bordelon's particular fact situation, Bordelon argues that the simple fact it received advance payment for a portion of services should not require it to compute notice from a date prior to the point when the subcontractor became delinquent to them. Since the debt became delinquent on November 1,[5] they argue that their December 12 notice fully complied with the 45-day notice requirement of the statute.
 
 
 17
 Piling makes the argument that a company similarly situated to Bordelon does not need the protection of the statute, and thus, it should not be extended to help it out of it's own poor business practices. It argues that unlike a comparable company working on a purely credit basis, Bordelon could have removed its barges after nonpayment, at no financial risk to itself.
 
 In its opinion, the district court found:
 
 18
 The proper focus of the statute is not the commencement of the claimant's work on the project, but the beginning of the period of the claimant's nonpayment for discreet increments of work performed. It would be an unreasonable interpretation of the statute to state that only claimants who are unpaid within the first forty-five days of their commencement of work on a public works project can claim remuneration from the contractor. The Court cannot impute such an unreasonable intent to the Florida legislature.
 
 
 19
 Although the construction of the statute advocated by appellants is not impossible, we, like the district court, believe such a viewpoint "unduly harsh and inconsistent with the language and spirit of the statute." D.I.C. Commercial Constr., 547 So.2d at 979.
 
 
 20
 The court of appeals affords deference to a district judge's interpretation of the law of a state in which the district judge sits. See Alabama Elec. Co-op. v. First Nat'l Bank of Akron, 684 F.2d 789, 792 (11th Cir.1982). Since this is a case of first impression, and since we agree with the rationale of the district court, we find that the notice period is tolled until the time "when the claimants are reasonably put on notice of nonpayment."
 
 III.
 
 21
 Finally, appellants make an argument which we reject without hesitation. It is maintained that the letter which Bordelon sent to Piling was inadequate to demonstrate the claimant's intent to look to payment from the contractor. There is no merit to this argument. Although the language of the December 12, 1986 letter was not the ideal example of a claimant's written notice of intent to look to a contractor not in privity for payment, its purpose was nevertheless quite clear.[6] Certainly it was in "substantial compliance" with the notice requirements of the statute. Cf. School Bd. v. Vincent J. Fasano, Inc., 417 So.2d 1063, 1066 (Fla.Dist.Ct.App.1982) (finding "substantial compliance" adequate for notice purposes "where it is conceded that the only possible legal consequence of putting the contractor and surety on written notice of ... participation in the project was to secure ... rights under the provisions of section 255.05(2)").
 
 
 22
 For the reasons set out above, the judgment of the district court in all respects is AFFIRMED.
 
 HILL, Senior Circuit Judge, dissenting:
 
 23
 I find no fault in the "Little Miller Act" which our panel today has devised for the State of Florida but I do not have any confidence that the Act we enforce is the Act intended by the Florida legislature.
 
 
 24
 Before Bordelon undertook to perform services, it demanded and received payment. Further, it provided for its own method of collection should Offshore fail to keep payments current. Offshore agreed with Bordelon that Piling could make payments of funds owing to Offshore payable jointly to Offshore and Bordelon. Bordelon did allow the party with whom it contracted to fall behind in payments, but it is not clear to me that this makes Bordelon an unpaid subcontractor as contemplated by the statute.
 
 
 25
 It is certainly not clear that Bordelon gave notice that it intended to rely upon a Little Miller Act bond within 45 days of commencing to perform the contract. Bordelon commenced performance on September 5, 1986. Bordelon gave notice on December 12 of that year. As our opinion today candidly discloses, "... it is necessary for us to look somewhat beyond the statutory language in order to apply the statute to the circumstances of the case at bar."
 
 
 26
 The opinion says, "Since we find the language of the statute less than clear when applied against the associated facts of this case, we attempt to determine the intent of the legislature in order to resolve this question of statutory interpretation." I, however, must assume that the members of the legislature enacted the law that they intended to enact; I cannot assume that they intended to cover this claim simply in order to avoid a result that we find "unduly harsh." Thus, I would rule that "since we find the language of the statute less than clear when applied against the associated facts of this case," we gratefully accept the opportunity that the Supreme Court of Florida affords us to certify this purely state law question--pending in the federal courts as a result of the happenstance of diversity jurisdiction--to the Supreme Court of Florida. By doing so, we would ensure that the law of Florida, and not the law that we assume Florida probably intended, would ultimately adjudicate this question. See Rule 9.150, Fla.R.App.P.
 
 
 27
 I would certify the question to the Supreme Court of Florida.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Honorable Susan H. Black, United States District Judge, Middle District of Florida, Jacksonville Division, presiding
 
 
 [2]
 Any person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority, for the construction of a public building, for the prosecution and completion of a public work, or for repairs upon a public building or public work shall be required, before commencing the work, to execute a payment and performance bond with a surety insurer authorized to do business in this state as surety. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons defined in s. 713.01 whose claims derive directly or indirectly from the prosecution of the work provided for in the contract ... The claimant shall have a right of action against the contractor and surety for the amount due him. Such action shall not involve the public authority in any expense
 Fla.Stat.Ann. Sec. 255.05(1) (West 1975 & Supp.1986) (amended 1988).
 
 
 [3]
 A relevant excerpt from the agreement stated: "... I agree to allow Bordelon Bros. Towing Co. to go directly to my customer [Offshore] for whom the barge is being used and to allow them to make the check payable to me/my company, and Bordelon Bros. Towing Co. jointly and/or to allow them to pay Bordelon Bros. Towing Company directly for expenses incurred and/or monies due." Record at 32
 
 
 [4]
 A claimant, except a laborer, who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 45 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given
 Fla.Stat.Ann. Sec. 255.05(2) (West 1975 & Supp.1989).
 
 
 [5]
 We utilize this date because Bordelon makes no claim, if any it had, for payment prior to this date
 
 
 [6]
 An excerpt from the two-page letter follows:
 Our agreement with ... [Offshore] ... indicates we can proceed directly to you for payment in the event that we have not been paid in a timely manner as prescribed. This memo is intended to put you On Notice of this and to humbly request that you reserve those funds indicated from any payments to be made to [Offshore]. We request immediate payment from you....