SAN JUAN AUDUBON SOCIETY
et al., Plaintiffs,

v.

Ann VENEMAN, Secretary,
Department of Agriculture,
et al., Defendants.

No. Civ.A. 00–0785(RMU).

United States District Court,
District of Columbia.

June 19, 2001.

Matt Kenna, Kenna & Hickcox, P.C., Durango, CO, Robert Ukeiley, Atlanta, GA, for the plaintiffs.

Gertrude Kelly, U.S. Department of Justice, Environment & Natural Resources, Washington, DC, for the defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

DENYING THE DEFENDANTS'
MOTION TO DISMISS

## I.  INTRODUCTION

On April 11, 2000, a coalition of environmental groups filed suit, claiming that the federal government had failed to meet its obligations to protect the endangered California condor (*Gymnogyps Californianus*) and other threatened or endangered animals.  These groups, San Juan Audubon Society, Sinapu, Inc., and Wildlife Damage Review, Inc. (collectively "the plaintiffs"), seek declaratory relief and a permanent injunction against the defendants, the Wildlife Services and Animal and Plant Health Inspection Service of the United States Department of Agriculture, and Ann Veneman, in her official capacity as Secretary of Agriculture (collectively "the defendants").  Specifically, the plaintiffs allege that the defendants' use of its M–44

sodium cyanide ejectors program ("M–44 program") in certain areas violates restrictions imposed by the Environmental Protection Agency ("EPA"). The defendants use the poisonous M–44 sodium cyanide capsules ("M–44s") to kill animals suspected of preying on livestock and to protect threatened or endangered animals. According to the plaintiffs, however, the defendants regularly misplace the M–44s, leading to the deaths of California condors and other threatened or endangered animals.

On March 16, 2001, the defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the court will deny the defendants' motion.

## II. BACKGROUND

The California condor is the largest bird in North America. See First Am.Compl. ("Compl.") at 12. It weighs about 22 pounds and has a wingspan of up to 9½ feet. See id. The California condor "remains one of the world's rarest and most imperiled vertebrate species." 61 Fed. Reg. 54044 (Oct. 16, 1996). It is an opportunistic scavenger, feeding only on carcasses after long-distance reconnaissance flights. See Compl. at 12–13. The federal government has listed the California condor as an endangered animal since 1967. See 61 Fed.Reg. 54044. Poisoning was one of several factors that led to the dramatic decline of the California condor population. See id. at 54046.

In this case, the plaintiffs allege that the defendants' failure to follow certain EPA restrictions is placing the California condor population and other threatened or endangered animals at great risk. See Compl. at 16. The other threatened or endangered animals include wolves, jaguars, lynx, bald eagles, and grizzly bears. See Compl. at 16.

Congress has given the Secretary of Agriculture ("Secretary") the power to carry out wildlife-control programs necessary to protect the nation's agricultural resources. See Mot. to Dismiss at 2. For example, Title 7 U.S.C. sections 426–426(b) authorize the Secretary to eradicate, suppress, or bring under control animals injurious to agriculture, horticulture, forestry, animal husbandry, wild game animals, fur-bearing animals, and birds. The Secretary is also authorized to control "nuisance mammals and birds." See id. (quoting 7 U.S.C. § 426(c)). As permitted by statute, the Secretary has delegated her authority under 7 U.S.C. sections 426–426(b) and section 426(c) to the Animal and Plant Health Inspection Service ("APHIS"), an agency of the United States Department of Agriculture. See id. Within APHIS, this authority resides with the Wildlife Services program ("APHIS–WS"). See id.

As part of its nationwide wildlife-control program, APHIS–WS uses the M–44s to protect federally designated threatened or endangered animals and to combat or control communicable diseases. See Mot. to Dismiss at 2. The M–44s are targeted at predators in an effort to protect threatened or endangered animals. See Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 2. The EPA regulates the use of the M–44s. See Federal Insecticide, Fungicide & Rodenticide Act ("FIFRA"), 7 U.S.C. § 136a. It is unlawful to use registered pesticides, such as the M–44s, in a way that violates EPA restrictions. See id. at § 136j(a)(2)(F). With this background, the court turns to the case at bar.

The EPA's current M–44 use restrictions require the defendants to use maps prepared by the U.S. Fish and Wildlife Service ("FWS") to protect areas where federally listed threatened or endangered animals may be adversely affected. See EPA Registration No. 56228–15, Restric-

tion 9 (June 10, 1999). The California condor and other threatened or endangered animals have been seen in Arizona, Utah, Colorado, Wyoming, and New Mexico. *See* Compl. at 15. The defendants are required to refer to maps prepared by FWS when placing the M–44s in these areas. *See* Compl. at 15–16. The plaintiffs claim that the defendants usually fail to use the required maps. *See* Pls.' Opp'n at 3. As a result, the defendants allegedly are not aware of areas where the California condor or other threatened or endangered animals may be adversely affected. *See* Compl. at 17. Even though the M–44s are targeted toward predatory animals, APHIS–WS's use of the M–44s has allegedly killed "non-target[ed]" animals, such as the California condor and other threatened or endangered animals by poisoning them (albeit unintentionally) with the M–44s. *See* Compl. at 16.

The lead plaintiff in this case is the San Juan Audubon Society ("San Juan"). San Juan is the Southwest Colorado chapter of the National Audubon Society. *See* Compl. at 3. It is dedicated to the preservation of birds and their habitat through education and advocacy. *See id.* The other plaintiffs are Sinapu, Inc. and Wildlife Damage Review, Inc. The plaintiffs brought this action on behalf of themselves, their members, and their staff. *See id.* at 4, 6, 7. Originally, the plaintiffs' suit contained two causes of action: (1) violation of the Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA"), and (2) violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). The parties settled the ESA cause of action in September 2000. Thus, only the plaintiffs' APA claim remains.

### III. ANALYSIS

#### A. Legal Standard

■ The defendants seek dismissal of the plaintiffs' FIFRA claim under Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States,* 657 F.Supp. 428, 431 (D.D.C.1987). Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *See* 5A Wright & Miller, FED. PRAC. & PROC.CIV.2D, § 1350. For this reason, the "[p]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion" than on a 12(b)(6) motion for failure to state a claim. *See id.* In addition, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, "[t]he court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Board of Elections and Ethics,* 104 F.Supp.2d 18, 22 (D.D.C.2000) (citing *Herbert v. Nat'l Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992)); *see also Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987).

■ The APA governs judicial review of agency action. *See* 5 U.S.C. § 706(2); *Public Citizen v. Heckler,* 653 F.Supp. 1229, 1236 (D.D.C.1987). The APA authorizes a reviewing court to "compel agency action withheld or unreasonably delayed" and to "hold unlawful and set aside agency action, findings and conclusions of law" that are, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. A court has subject-matter juris-

diction to review an agency action under the APA if the agency action is final. *See* 5 U.S.C. § 704 ("Final agency action for which there is no other adequate remedy in a court [is] subject to judicial review").

## B. The Court has Subject–Matter Jurisdiction

The defendants contend that this court lacks subject-matter jurisdiction because the plaintiffs fail to identify any specific, final agency action as required by the APA.[1] *See* Further Support for Mot. to Dismiss ("Reply") at 1. The plaintiffs claim that they have identified specific agency actions and these actions are final agency actions as required by the APA. *See* Pls.' Opp'n at 5–9. The court agrees with the plaintiffs.

■ The plaintiffs claim a right to judicial review under the APA, which provides, in pertinent part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." 5 U.S.C. § 702. This provision requires the plaintiffs to "identify some [particular] 'agency action,'" and "the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (internal citations omitted).

### 1. Particular Agency Action Requirement

■ Despite the defendants' argument to the contrary, the plaintiffs have identified particular agency action, as required by the APA. The particular agency actions at issue in this case are the defendants' approvals and individual decisions to place the M–44s "in areas where federally listed threatened or endangered species might be adversely affected" without using the maps required by the EPA. *See* Pls.' Opp'n at 7.

The defendants argue, however, that the plaintiffs have made only general allegations about the M–44 program. *See* Reply at 2. In so doing, the defendants rely primarily on *Lujan*. In *Lujan*, the Supreme Court held that a plaintiff "cannot demand a general judicial review of [an agency's] day-to-day operations" under the APA. *See Lujan*, 497 U.S. at 899, 110 S.Ct. 3177. The court disagrees with the defendants' application of *Lujan* to the instant case for two reasons.

First, unlike *Lujan*, the plaintiffs in this case are not seeking wholesale review of the defendants' M–44 program. In other words, the plaintiffs do not ask the court to review the program's merits as a matter of policy. Rather, the plaintiffs' claim is limited to the defendants' use of the M–44s in certain areas without referring to the statutorily required maps. This alleged use would be prohibited because it violates the EPA. *See* FIFRA, 7 U.S.C. § 136j(a)(2)(F).

Second, unlike *Lujan*, this case is not being decided on summary judgment. The particularity required by the *Lujan* court, with respect to the agency action in question, was greater than in this case because *Lujan* was decided on summary judgment. *See Lujan*, 497 U.S. at 884, 110 S.Ct. 3177 (Rule 56(c) mandates summary judgment "*after adequate time for discovery* …

---

1. The defendants also argue that if this court does not have subject-matter jurisdiction, then the plaintiffs' FIFRA claim should also be dismissed for failing to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss at 9–12. Because the court holds that there is subject-matter jurisdiction over the plaintiffs' FIFRA claim, the court need not reach the defendants' 12(b)(6) argument.

against a party who fails to" establish an essential element of its case (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (emphasis added)). In this case, the plaintiffs claim that they will file an administrative record that will present fully fleshed-out facts with greater particularity. *See* Pls.' Opp'n at 7. Indeed, the plaintiffs have not yet had an opportunity to take discovery.

Accordingly, the court holds that the plaintiffs have identified particular agency action.

### 2. Final Agency Action Requirement

■ The court must now determine whether the particular agency action is final, as required by the APA. Agency action is final if (1) the action "mark[s] the 'consummation' of the agency's decision-making process," and (2) the action determines "rights or obligations" or resolves issues " 'from which legal consequences . . . flow.' " *See Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations omitted); *see also Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C.Cir.2000) (finding EPA's issuance of guidance document to be final agency action subject to review).

■ In this case, the agency action at issue satisfies both requirements. First, the defendants' use of the M–44 program on certain lands fully consummates the defendants' decision-making process. The defendants are required to rely on maps prepared by FWS when using the M–44s in certain areas. *See* EPA Registration No. 56228–15, Restriction 9 (June 10, 1999). According to the plaintiffs, the defendants violated this provision by failing to use the required maps. *See* Pls.' Opp'n at 3. Therefore, the defendants' decision-making process is consummated because it is "not . . . merely tentative or [of an] interlocutory nature." *See Bennett*, 520

U.S. at 178, 117 S.Ct. 1154 (distinguishing prior cases where agency action was not final but a "tentative recommendation" and "not binding").

Second, the defendants' alleged failure to refer to the required maps when placing the M–44s in certain areas determines the plaintiffs' rights in these areas. The court disagrees with the defendants' argument that the plaintiffs have "failed to allege a '*concrete* action . . . that harms or threatens to harm [them].' " Reply at 6 (emphasis in original). The plaintiffs have specifically alleged that the defendants' failure to use maps prepared by FWS has diminished and will continue to diminish the benefits they currently enjoy. *See* Compl. at 3–4, 8 ("Plaintiffs have been, are being . . . [and] will continue to be adversely affected and injured by [the defendants'] failure to comply with the [EPA's] use restrictions for M–44s").

In arguing that the agency action in this case is not final, the defendants rely on cases that either involved wholesale review of a particular program or challenged agency decisions before they were implemented. For example, in *Foundation on Economic Trends v. Lyng*, the plaintiffs challenged the Department of Agriculture's failure to prepare environmental impact statements pertaining to its germplasm preservation program. *See* 943 F.2d 79 (D.C.Cir.1991). In concluding that the district court should have dismissed the case for lack of subject-matter jurisdiction, the D.C. Circuit held that the plaintiffs' challenge required wholesale review of the germplasm preservation program. *See id.* at 86. In the instant case, however, the plaintiffs do not seek wholesale review of the M–44 program. Rather, they seek to enforce one provision of the law, FIFRA, 7 U.S.C. § 136j(a)(2)(F), against concrete actions taken by the defendants.

The defendants also rely on cases involving challenges to agency decisions that were adopted, but not implemented. For example, in *Ohio Forestry Association v. Sierra Club,* the Supreme Court held that a challenge to the Forest Service's federal land and resource management plan was not final agency action, as required by the APA, because the plan had only been adopted, but not implemented. *See* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). In this case, though, the plaintiffs are not challenging a *plan* to stop using the required maps when placing the M–44s in certain areas. Rather, they are challenging the defendants' *past* failures to use the required maps before placing the M–44s.

The agency action in this case marks the consummation of the defendants' decision-making process and determines the plaintiffs' rights. Therefore, the court holds that the plaintiffs have identified specific, final agency action, as required by the APA. Accordingly, the court has subject-matter jurisdiction.

## IV.  CONCLUSION

For all these reasons, the court denies the defendants' motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 19th day of June, 2001.