**Hung Hy NGUYEN dba Mekong Market, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 85–3783.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1987.

Decided Aug. 6, 1987.

John Lisensky Volpert, Jonathan M. Hoffman, Stephanie L. Striffler, Portland, Or., for plaintiff-appellee.

Edward Cohen and Al Daniel, Washington, D.C., for defendant-appellant.

Before SNEED and HALL, Circuit Judges, and LEGGE,* District Judge.

SNEED, Circuit Judge:

The Department of Agriculture's Food and Nutrition Service (FNS) disqualified appellee Hung Hy Nguyen from participation in the Food Stamp Program for one year. The district court, on remand from an earlier appeal, held the FNS decision to be invalid because the FNS had relied on an unpublished instruction in reaching it. The government appeals from the district court's grant of summary judgment for Nguyen, and we reverse.

## I.

### FACTS AND PROCEEDINGS BELOW

Appellee Nguyen is a retail grocer in Portland, Oregon, who was authorized to participate in the Food Stamp Program (the Program) in 1977. Retailers may not accept food stamps in exchange for non-food items. If they do so, the FNS can in certain circumstances penalize them with dis-

---

* Honorable Charles A. Legge, United States District Judge, Northern District of California, sitting by designation.

1. Subsequent to the violations at issue the Department of Agriculture amended its regulations, replacing the phrase "firm's policy" with the new term "firm's practice." See 7 C.F.R. § 278.6(e)(2) (1987). This change was intended to dispel the confusion that the definition of store policy had generated, as well as to broaden a store's liability for its violations. See 47 Fed.Reg. 56,470 (1982).

2. Section III(B) of the Instruction provides in part:

   Reasons for Violations. The reason for the violations revealed by the investigation may be determined by considering the following factors.
   1. Operating Policy of the Store. As a general rule, violations shall be attributed to a

---

qualification from the Program or with civil penalties. See 7 U.S.C. § 2021.

In 1979 and again in 1980, the FNS wrote Nguyen warning him about possible violations being committed in his store. In 1981, the FNS sent undercover agents to Nguyen's store, where on six occasions they were permitted to buy conspicuous and sometimes expensive non-food items with food stamps. The salespeople specifically involved were Nguyen's sister-in-law, a store clerk, and a stock man.

Under the regulations then in effect, see 7 C.F.R. § 278.6(e)(2) (1982), a previously warned retailer who maintained a "policy" of accepting food stamps for such improper items could be disqualified from the program for one year.[1] Less severe penalties applied to violations resulting from mere carelessness or poor supervision. Id. The FNS notified Nguyen of the violations found during the investigation and gave him an opportunity to respond. After full administrative review, the FNS imposed the stricter penalty. The FNS review officer relied in his decision in part on FNS Instruction 744–9 (the Instruction), which is not published in Federal Register. Section III(B)(1) of the Instruction provides that as "a general rule," violations are attributable to a store's policy when at least four improper sales have been made by the owner, his close relatives, persons who run the store, or two or more clerks.[2]

---

disregard of program regulations, as opposed to carelessness or poor supervision, when there have been a minimum of four clearly violative sales of ineligible items, and any or all of the following persons took an active part in the violations:
   a. *The owner, spouse, sons, daughters, or other close relatives* of the owner who are regularly involved in the operation of the store.
   b. *Members of management,* including a person designated as a clerk, but who is in effect running the store in the absence of the owner for extended periods of time or on a regular basis.
   c. *Two or more clerks* who sell common grocery-type or major non-grocery-type ineligible items without refusal during the course of the investigation when there is a record of previous compliance action which documents that the owner or appropriate store official had been cautioned about the possibility of viola-

Nguyen sought review of the agency decision in district court. His original challenge did not include the claim now at issue, that reliance on the unpublished Instruction was improper under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(1). Instead Nguyen contended that the Instruction was unreasonable in substance. The district court held for Nguyen, but on appeal, this court reversed and remanded in light of *Bertrand v. United States*, 726 F.2d 518 (9th Cir.1984), in which we upheld the Instruction as a reasonable interpretation of the regulations.

On remand Nguyen was permitted to amend his complaint to raise the FOIA claim. The district court then granted summary judgment for Nguyen, again striking down his one-year disqualification. The government appeals both the amendment of Nguyen's pleadings [3] and the lower court's holding on the merits. After setting forth the standards governing our review, we will address, first, the amendment of the complaint and, second, the FOIA claim.

## II.

## STANDARD OF REVIEW

Permission to amend pleadings is reversible only for abuse of discretion. *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1433 (9th Cir.1986). However, the district court's construction of FNS Instruction 744–9 and consequent grant of summary judgment are subject to *de novo* review. *Bertrand*, 726 F.2d at 520.

## III.

## LEAVE TO AMEND PLEADINGS

■ We have held that the district courts in general should "freely" permit amendment of pleadings. *Hurn v. Retire-*

*ment Fund Trust*, 648 F.2d 1252, 1254 (9th Cir.1981). The government has not claimed undue delay on Nguyen's part, nor shown any of the other factors compelling denial of a motion to amend: bad faith, prejudice to the opponent, or futility of amendment. *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir.1986). It is also unlikely that adjudication of the new claim impaired judicial economy. Although a "general policy of permitting amendment after losing an appeal" would promote "inefficient use of scarce judicial resources," *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1338 (9th Cir.1984), here, this court's earlier remand specifically authorized consideration of Nguyen's other claims. *Nguyen v. United States*, 792 F.2d 1500, 1503 (9th Cir.1986). We conclude that the district court did not abuse its discretion.

## IV.

## FOIA CLAIM

### 1. *Introduction*

The FOIA contains two provisions pertinent here. First, it requires agencies to publish in the Federal Register all "statements of general policy and interpretations of general applicability." 5 U.S.C. § 552(a)(1)(D). Second, it provides that no one may "be adversely affected" by "a matter required to be published ... and not so published." *Id.* § 552(a)(1). The Instruction here, as we have said, was never published, and Nguyen contends that these provisions invalidate his one-year disqualification. We disagree.

This circuit's precedents firmly establish that a claimant in Nguyen's position cannot succeed under § 552(a)(1) unless the unpublished material at issue affected his "substantive rights." *See, e.g., Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1018 (9th Cir.

---

tions occurring in the store and the consequence of being found violating.

Apparently the FNS continues to look to Instruction 744–9 in administering the amended regulations. *See Banh v. United States*, 814 F.2d 1358, 1360–61 (9th Cir.1987).

**3.** A motions panel of this court, in *Nguyen v. United States*, 792 F.2d 1500 (9th Cir.1986), held

that our previous mandate had not precluded the district court from considering Nguyen's motion to amend. The panel did not decide whether the district judge properly granted leave to amend; it only held that Nguyen's motion was properly before the lower court. The panel therefore approved *Nguyen* for review on the merits. *Id.* at 1503.

1987); *Cubanski v. Heckler,* 781 F.2d 1421, 1428–29 (9th Cir.1986), *cert. granted sub. nom. Bowen v. Kizer,* — U.S. —, 107 S.Ct. 1282, 94 L.Ed.2d 141 (U.S.1987);[4] *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983); *Anderson v. Butz,* 550 F.2d 459, 463 (9th Cir.1977). Our earlier cases employed this substantive rights test in applying the first of the two § 552(a)(1) provisions: *i.e.,* to determine whether the agency directive had to be published. *See Powderly,* 704 F.2d at 1098; *Anderson,* 550 F.2d at 463. More recently, we have used the test in construing the second provision: *i.e.,* to determine whether the directive, even if it should have been published, "adversely affected" the claimant. *See Mada-Luna,* 813 F.2d at 1018; *Cubanski,* 781 F.2d at 1428–29; *see also Zaharakis v. Heckler,* 744 F.2d 711, 714 (9th Cir.1984). Thus, we must first decide whether to apply the substantive rights test to the publication requirement or to the adverse effect requirement.

### 2. *Substantive Rights and the Publication Requirement*

We believe the later cases offer the best approach to this "most troublesome" problem. 1 K. Davis, *Administrative Law Treatise* § 5:10 at 341 (2d ed. 1978).

Neither the language nor the legislative history of the publication requirement suggests any connection to individuals' substantive rights. Only the phrases "of *general* applicability" and "of *general* policy" qualify which interpretations and policy-

statements must be published. 5 U.S.C. § 552(a)(1)(D). Congress inserted these qualifiers where it previously had the phrase "not ... addressed to and served upon named persons." *See* S.Rep. No. 813, 89th Cong., 1st Sess. 6 (1965). The Senate characterized this change as a "technical" one, *id.,* suggesting that it considered the phrases equivalent. In an earlier version of the FOIA, Congress distinguished rules of general applicability from those that were particularized in scope, offering rates as an example of the latter. S.Rep. No. 1219, 88th Cong., 2d Sess. 4 (1964). The legislative history thus indicates a rather obvious definition of "general": that which is neither directed at specified persons nor limited to particular situations.[5]

Unquestionably, the Instruction here contained an interpretation of "general" applicability or at the very least a statement of "general" FNS policy. Therefore it ought to have been published under § 552(a)(1)(D). But this does not end the matter: § 552(a)(1) offers no relief to Nguyen unless the Instruction "adversely affected" him. On this point, the "substantive rights" test is directly apposite. The question before us, then, is whether the Instruction affected Nguyen's "substantive rights."

### 3. *Meaning of the Substantive Rights Test*

The meaning of the substantive rights test is not something that springs lightly

---

**4.** We note that *Mada-Luna* and *Cubanski* were decided after the district court entered its judgment in this case.

**5.** Moreover, linking the substantive rights test to the publication requirement, rather than to the adverse effect requirement, creates an inconsistency between 5 U.S.C. § 552 (the FOIA) and 5 U.S.C. § 553 (part of the Administrative Procedure Act (APA)). The APA exempts "interpretative rules [and] general statements of policy" from its notice-and-comment requirements. 5 U.S.C. § 553(b)(A). This court has defined such rules and policy statements as those *not* involving substantive rights. *E.g., Romeiro DeSilva v. Smith,* 773 F.2d 1021, 1025 (9th Cir.1985). Thus, to define the FOIA's "statements of general policy or interpretations of general applicability" as those which *do* involve substantive rights would be to ascribe opposite meanings to essen-

tially the same words. The logical conclusion is rather that those non-substantive agency instructions exempted from the APA's notice-and-comment procedures are nonetheless subject to the FOIA's publication requirement.

This view is also consistent with 5 U.S.C. § 552(a)(2), which provides that agencies must make available for inspection "those statements of policy and interpretations that have been adopted by the agency and are not published in the Federal Register." This provision has sometimes been thought to conflict with § 552(a)(1)(D). *E.g.,* K. Davis, *Administrative Law of the Seventies* § 3A.7 (1976). Its meaning, however, is straightforward in light of the foregoing: it applies to those interpretations and policy statements directed to *particular* parties or circumstances.

from the page. The government urges a view of the test that is unduly positivistic. According to the government, Nguyen has no substantive right to participate in the Food Stamp Program because under the statute and the Instruction, which we upheld in *Bertrand*, 726 F.2d at 521, he is excluded from eligibility. On this view, the Instruction cannot adversely affect Nguyen's "substantive rights." He has no rights under the Food Stamp Program.

The argument is deft, but it conceals the true issue, *viz.*, does Nguyen have substantive rights that the unpublished Instruction sought to extinguish? To support its position, the government quotes a sentence from our *Powderly* opinion, 704 F.2d at 1098: "Exclusion, where no right previously existed, does not constitute a change in substantive rights." But *Powderly* involved *improperly obtained* Social Security benefits, as to which the court held that the plaintiff had no colorable statutory claim. *See* 704 F.2d at 1096. We did not in *Powderly* hold that § 552(a)(1) can never apply to an agency interpretation that describes the limits of eligibility for statutory benefits. We simply held that agency directives aimed at the *recovery of wrongly acquired* benefits do not affect the wrongful beneficiary's substantive rights. Indeed, in *Anderson* we explicitly held that the Food Stamp Program conferred substantive rights on participants and that an FNS instruction adversely affected these rights. *See* 550 F.2d at 463 & n. 12.

On the other hand, to say exactly which rules "affect substantive rights"—in this context as in many others—is a problem that tends to invite over-generalization and abstraction. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 107–08, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) (Frankfurter, J.). Our best approach is to proceed in a manner that reflects the purposes underlying the publication rule: avoidance of arbitrary agency decisionmaking and guidance for the legitimate expectations of the regulated public. *See Anderson v. Butz*, 428 F.Supp. 245, 251 (E.D.Cal.1975), *aff'd*, 550 F.2d 459 (9th Cir.1977); *Lewis v. Weinberger*, 415

F.Supp. 652, 660–61 (D.N.M.1976), *relied on in Anderson*, 550 F.2d at 463. In doing this, we find that three major factors should be considered in determining whether agency action affects individuals' substantive rights. Each has been considered in prior cases.

First, we have said that an unpublished interpretation affects substantive rights when it changes existing rules, policy or practice. *See, e.g., Powderly*, 704 F.2d at 1098; *Anderson*, 550 F.2d at 463; *accord United States Dep't of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1153, 1155 (5th Cir.1984). Where an agency changes the governing rules and then applies its new policy without warning, the affected public may be unfairly and arbitrarily surprised. In this way we recognize that administrative agencies "make law" and ensure that they do so within the limits fixed by Congress.

Second, courts should consider whether the interpretation deviates from the plain meaning of the statute or regulation at issue. *See, e.g., Kahn v. United States*, 753 F.2d 1208, 1223 n. 8 (3rd Cir.1985) (relying on *Powderly*, 704 F.2d at 1098). An agency cannot expect the public to divine its rules or interpretations. If, however, an instruction merely restates the plain meaning of statutory or regulatory terms, there will be no appearance of arbitrary decisionmaking and prior publication is much less important. "Lawmaking" by an administrative agency cannot mislead. One must know the law. However, to restate the law after having either not stated it or misstated it previously neither confers nor withdraws substantive rights. To this extent the government's "deft" argument was correct.

Finally, we have said that an agency rule is substantive if it is of binding force and narrowly limits administrative discretion. *See, e.g., Mada-Luna*, 813 F.2d at 1014; *Romeiro*, 773 F.2d at 1024–25; [6] *Anderson*, 550 F.2d at 463. The public's need to know of agency interpretations is greatest when the interpretation will be *conclusive* in the agency's ultimate decision. When an agen-

**6.** *Mada-Luna* and *Romeiro* relied on this consideration in defining substantive rights for the purposes of 5 U.S.C. § 553 (the APA) rather than

§ 552 (the FOIA). However, once we found that a rule involved no substantive rights within the purview of the APA, we concluded that no

cy produces a "field-level instructional guide" simply to assist its own employees in administering a regulation, it has not made law affecting substantive rights. *Cubanski*, 781 F.2d at 1426–27; *accord Cubanski*, 794 F.2d 540, 542 (9th Cir.1986) (Kozinski, J., dissenting from denial of rehearing en banc). In brief, notice must be given both to make and to change such "law." Of course, the line between juridically proper "law" made by an administrative agency and an agency interpretation that merely *recommends* guidelines or inferences for agency officials is not a bright one. Lawmaking and administration occupy different ends of a spectrum in which one softly merges into the other. Rules of thumb to guide officials, however, occupy a position on the administration side of that spectrum.

### 4. *Application of the Test to this Case*

Applying these three factors to the case at hand, we conclude that Instruction 744–9 did not adversely affect Nguyen's substantive rights.

First of all, the district court specifically found that the Instruction made no change in past agency practices, and Nguyen does not contend that he was relying on any prior agency interpretations of what would constitute his store's "policy." Second, as to whether the Instruction merely restated the plain meaning of the term "policy," we agree with Nguyen that the ordinary store owner could not have anticipated that the FNS would specify four violations (or two

or eight for that matter) perpetrated by the owner's family, a manager, or more than one clerk, as evidencing the operating policy of the store. However, the FNS had twice warned Nguyen that any further improper sales in his store could lead to disqualification, so even this factor does not lie entirely in his favor.

The third factor, as already suggested, tips the balance to the government's position. The Instruction's interpretation of store policy describes a *"general rule"* of persuasive, rather than conclusive, force. *See supra* note 1. It is a guideline, an instruction on how to administer the law. It is worded in terms of considerations that *"may"* be used in the final determination of the appropriate penalty for Program violations. *Id.* Section III(B)(2) of the Instruction requires examination of evidence extenuating the violations, and section IV firmly directs the agency reviewer to make case-by-case determinations rather than mechanically applying per se rules.[7] Thus section III(B)(1), of which Nguyen complains, operates essentially not to determine rights but to trigger further agency scrutiny.

We are thus convinced that the interpretation of the word "policy" contained in the Instruction did not "adversely affect" Nguyen's substantive rights within the meaning of the FOIA. It neither created nor extinguished administratively made law. Nguyen was not relying on a contrary rule, the interpretation was not too far removed from the plain import of

---

substantive rights were affected for FOIA purposes as well. *See Romeiro,* 773 F.2d at 1025 n. 3.

7. Section III(B)(2) of the Instruction reads:
   *Refusals to Violate.* Complete or partial refusals to violate the program must be carefully examined to determine whether reported violations were possibly a result of error or misunderstanding. Attention shall be given to the store personnel and the types of attempted violations involved in the refusals, the extent of the refusals, and the pattern of the refusals. For example, a case in which the clerks sold ineligible items and the owner refused to do so would be considered less serious than a case in which the opposite occurred.
   Section IV provides (emphasis added):
   *Criteria for Final Determination*

After the complete case record is examined in light of the factors discussed in Section III, above, the most appropriate final determination as provided in section 278.6(c) of the regulations shall be recommended by the Officer In Charge and imposed by the Regional Office. The circumstances warranting the various periods of disqualification and the issuance of a warning letter are discussed below. *It is not possible to develop guidelines that will precisely fit all situations involving evidence of violations by firms. The reviewer shall choose a determination which is both reasonable and consistent with previous determinations in similar cases.* It is extremely important to review previous cases which are similar in nature and to compare the final determinations in them with the action selected for the present case.

the regulation, and the Instruction left a good deal of room for rebuttal of its inference and the exercise of discretion. *Cf. Linoz v. Heckler,* 800 F.2d 871, 874, 877–78 & n. 11 (9th Cir.1986) (hearing officer's *exclusive reliance* on provisions of unpublished government claims manual that were *binding* in benefit determinations, that *changed* existing policy, and that *created exception to published regulation* violated the FOIA) (alternative holding); *Anderson,* 550 F.2d at 463 (FNS instruction that *changed* food stamp eligibility requirement and that was *binding* on decisionmakers did affect participants' substantive rights).

To be sure, the FNS's ultimate decision "adversely affected" Nguyen. That deprivation resulted from enforcement by the proper agency of the law promulgated by Congress. In its enforcement, the FNS primarily based its decision not on the Instruction, but rather on an independent evaluation of the seriousness of Nguyen's violations, the two prior warnings directed to him, and the failure of anyone at his store ever to refuse an improper sale. *See* E.R. at 145.

REVERSED. Judgment to be entered for the United States.