**John P. CAPUANO, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD and Administrator of the Federal Aviation Administration, Respondents.**

**No. 87-1477.**

United States Court of Appeals, First Circuit.

Heard Feb. 2, 1988.

Decided April 4, 1988.

---

William St. James, Springfield, Mass., for petitioner.

Karen R. Bury, with whom Peter J. Lynch, Manager, Enforcement Proceedings Branch, Washington, D.C., was on brief, for respondents.

Before COFFIN and BREYER,
Circuit Judges, and PETTINE,* Senior District Judge.

BREYER, Circuit Judge.

John Capuano, the petitioner, seeks review of a National Transportation Safety Board decision affirming a Federal Aviation Administration ("FAA") order suspending his flight instructor's license for 45 days. He does not deny the Board's authority to suspend a license, 49 U.S.C. App. § 1429 (1982); *Pangburn v. Civil Aeronautics Board*, 311 F.2d 349 (1st Cir. 1962), nor that the facts of his case are legally sufficient to warrant the suspension. Rather, he argues that the Administrative Procedure Act, 5 U.S.C. §§ 551–59, 701–06 (1982), and, in particular, that portion of it known as the Freedom of Information Act, 5 U.S.C. § 552 (1982), requires the Board to publish in the Federal Register an enforcement manual, Federal Avia-

tion Administration Order 2150.3, Compliance and Enforcement Program (1980) ("the 1980 Handbook"), that tells its employees that "[s]uspension may be used for punitive purposes when the nature of the violation warrants," 1980 Handbook, ¶ 205b.2, and also sets forth criteria FAA officials are to use when deciding whether to ask the Board to impose suspension or a lesser sanction. 1980 Handbook, ¶¶ 203–04 (describing criteria for choosing which remedy to impose for violation); 1202a.4 (describing "shift in sactions" from civil penalties to license suspension in certain circumstances). He points to 5 U.S.C. § 552(a)(1) which requires each agency to "publish in the Federal Register," among other things:

> (D) substantive rules of general applicability ... and statements of general policy or interpretations of general applicability formulated and adopted by the agency.

He then notes the Act's statement that "a person may not in any manner be ... adversely affected by ... a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a)(1).

Petitioner, however, misunderstands the APA. This misunderstanding is revealed in his brief where he says that "the APA divides government policies into two classes: Class A, those ... rules ... which require *both* publication *and* promulgation through formal [or informal] rulemaking procedures; and Class B, or everying else ... all of which must at least be published in the Federal Register." Petitioner's Brief at 13–14. (Emphasis in original.) In fact, the APA describes other categories of rules, practices, and procedures as well. The very next subsection of § 552, namely § 552(a)(2), refers, among other things, to:

> (B) those statements of policy and interpretations which have been adopted by the agency and *are not published* in the Federal Register; and
> (C) administrative staff manuals and instructions to staff that affect a member of the public.

5 U.S.C. § 552(a)(2) (emphasis added). These materials need not be published *in*

---

* Of the District of Rhode Island, sitting by desig-    nation.

*the Federal Register.* They must simply be made "available for public inspection and copying ... unless the materials are promptly published and copies offered for sale."

The manual here at issue fits best the description of § 552(a)(2)(C). It is not intended to affect the rights, duties, obligations, or conduct of pilots or any other member of the public. A pilot's obligation, under the law, is to refrain from those activities that call for a sanction, whether that sanction is strict or lenient, and whether the agency devotes many, or few, staff resources to the business of catching violators. The manual that tells the staff when to seek sanctions or what sanctions to seek is written to guide FAA staff, not the public.

Courts that have considered enforcement manuals in this context have divided over the question of when and whether the manuals must be made available for inspection, 5 U.S.C. § 552(a)(2); and when they may be kept confidential, 5 U.S.C. § 552(b)(7) (1982 & Supp. IV 1986). *See Sladek v. Bensinger,* 605 F.2d 899 (5th Cir.1979) (Drug Enforcement Agency ("DEA") manual provisions describing handling of confidential informants and search warrant procedures may be disclosable under § 552(a)(2)(C) or exempt under § 552(b)(2)); *Cox v. United States Department of Justice,* 576 F.2d 1302, 1306–08 (9th Cir.1978) (DEA's agent manual disclosable under § 552(a)(2)(C)); *Hawkes v. Internal Revenue Service,* 467 F.2d 787, 795 (6th Cir.1972) (Internal Revenue Service, staff manual disclosable under § 552(a)(2)(C)); *see also Jordan v. United States Department of Justice,* 591 F.2d 753 (D.C.Cir.1978) (U.S. Attorney staff manuals available on request under § 552(a)(3)). But the courts have unanimously held that publication in the Federal Register under § 552(a)(1) is not required. *See Jordan,* 591 F.2d at 760; *Cox,* 576 F.2d at 1306, n. 8; *cf. Sladek,* 605 F.2d at 899; *Hawkes,* 467 F.2d at 787. The FAA stated at oral argument (without contradiction) that it has published the manual here at issue and the public can easily inspect, copy, or buy it. The APA requires no more.

The petition is

*Denied.*