78 F.3d 1360
 1996 A.M.C. 1070, 96 Cal. Daily Op. Serv. 1688,
96 Daily Journal D.A.R. 2855
 LAKE MOHAVE BOAT OWNERS ASSOCIATION,
Plaintiff-Appellee-Cross-Appellant,
v.
NATIONAL PARK SERVICE, Alan J. O'Neill, Stanley Albright,
Bruce Babbitt, Secretary of the Interior, and
Seven Resorts, Inc.,
Defendants-Appellants-Cross-Appellees.
 Nos. 93-55629, 93-55759 and 93-55875.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1994.
Decided Oct. 18, 1995.
Amended March 12, 1996.
 
 John F. Daly, Frank W. Hunger, Nora Manella and Michael Jay Singer, Department of Justice, Washington, DC; Barnet Resnick and Catherine T. Fair, White, Clinebell & Resnick, Newport Beach, California, for defendants-appellants-cross-appellees.
 Roger N. Golden, Beverly Hills, California, for plaintiff-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California, James M. Ideman, District Judge, Presiding.
 Before D.W. NELSON, WILLIAM A. NORRIS, and BOGGS,* Circuit Judges.ORDER
 On October 18, 1995, this court issued its opinion in this case. Both parties filed petitions for rehearing. The petition for rehearing by Lake Mohave Boat Owners Association is denied.
 In response to the petition by the Defendants-Appellants, the panel has made revisions to its original opinion, and herewith enters the attached amended opinion.
 OPINION
 BOGGS, Circuit Judge.
 
 
 1
 The National Park Service (NPS) and Seven Resorts, Inc. (SRI) appeal from the district court's grant of summary judgment in favor of the Lake Mohave Boat Owners Association (LMBOA). The district court held that NPS violated the Freedom of Information Act (FOIA), 5 U.S.C. § 552, because NPS did not publish in the Federal Register its rate-setting guidelines for marinas that operate in national parks. The district court also found that NPS violated LMBOA's due process rights by not providing it with notice and an opportunity to comment on rate changes. The court voided the rate increase for the Lake Mohave Resort marina, operated by SRI, and awarded restitution jointly against both NPS and SRI for $258,093. The court also eventually granted declaratory and injunctive relief requiring publication of the guidelines and forbidding rate increases without notice and opportunity for comment. NPS and SRI appeal these rulings. LMBOA cross-appeals the district court's finding that it is not entitled to damages because the government had not waived sovereign immunity.
 
 
 2
 We hold that LMBOA lacked standing to bring a claim for restitution on behalf of its members. We also hold that NPS did not violate federal law when it failed to publish in the Federal Register the guidelines manual it used to set marina rates. Furthermore, constitutional due process guarantees do not require NPS to conduct a hearing before changing marina rental rates. We reverse and remand to the district court, to determine the issue not ruled on below of whether NPS acted arbitrarily and capriciously, in violation of its rent-setting regulations, in approving the rent increase.[1]
 
 
 3
 * LMBOA is a non-profit association of boat owners, each of whom pays monthly rent for boat slips at SRI's Lake Mohave Resort concession. Under its concession contract with NPS, SRI must obtain approval of its boat slip rental rates from NPS. NPS approved the first rent increase at issue in this case in January 1988, raising the rental rate from $4.00 to $5.50 per foot, based on length of boat or length of slip, whichever was greater. This increase was allegedly based upon a study of rates at comparable marinas.
 
 
 4
 Initially, LMBOA contended that the marinas that NPS used to justify the increase were not comparable to the Lake Mohave marina, and that NPS had not followed 16 U.S.C. § 20b(c)[2] or the NPS procedures set forth in chapter 18 of NPS-48.[3] LMBOA claims that rates at truly comparable marinas are $3.31 to $3.83 per foot, based on its own comparability study conducted in May 1988. NPS conducted another comparability study in October 1988, and in March 1989 announced that comparable fees were between $4.00 and $4.50 per foot.
 
 
 5
 LMBOA asked for a rate rollback, which NPS refused in July 1989. NPS then conducted a more extensive comparability study, which included data from Lake Shasta, a marina on federal land. That study yielded a "comparable" rate of $5.46. LMBOA asserts that the method used by NPS to cover the per-slip rental rates at Lake Shasta to per-foot rental rates as used at Lake Mohave inflated the "comparable" rental rate. LMBOA claims that the NPS incorrectly assumed that the per-slip rate at Lake Shasta was for the use of 15-foot boats, because the boats generally in use at Lake Shasta are much larger than at Lake Mohave. LMBOA contends that the Lake Shasta marina was inappropriate for comparison purposes because it is located on federal land.
 
 
 6
 LMBOA filed suit in March 1990 on behalf of its members. It attacked both the procedures NPS followed in adopting its guidelines, and the methods used to calculate the Lake Mohave rent increases. LMBOA argued that any rent increase required notice and a hearing under the Administrative Procedure Act (APA), 5 U.S.C. § 553, and under the due process guarantees of the Fifth Amendment. LMBOA also claimed that the Freedom of Information Act public information requirements, 5 U.S.C. § 552, required NPS to publish NPS-48 in the Federal Register. Also, LMBOA claimed that calculations in the NPS comparability study were flawed. LMBOA sought restitution of excess rents paid and an injunction to prevent SRI from collecting the rent increase. LMBOA also sought a declaratory judgment that NPS approved rent increases in violation of the APA, performed an inaccurate comparability study to justify the increase, and must promulgate regulations to establish the appropriate method to cover per-slip rates to per-foot rates. LMBOA sought aggregate damages exceeding $100,000 plus interest.
 
 
 7
 Both parties moved for summary judgment. NPS argued that the comparability requirement was imposed by statute, 16 U.S.C. § 20b, and that the management policies used to manage concessions and contained in NPS-48 were developed after seeking public comment through a published notice in the Federal Register. 41 Fed.Reg. 37622 (1976) (announcing annual review of management policies). The standard language in concession contracts such as the Lake Mohave contract has been published in the Federal Register. 46 Fed.Reg. 14460, 14465 (1981) (publication of changes to standard NPS concession contract). Because NPS-48 contained information that had either been published in the Federal Register via these documents, or was available to the public on request, NPS argued that § 552 did not require publication of NPS-48 in the Federal Register.
 
 
 8
 The district court granted LMBOA's motion for summary judgment, and held that § 552 required NPS to publish NPS-48 in the Federal Register. The court also found that the procedural due process guarantees of the Fifth Amendment required NPS to adopt procedures to allow affected parties an opportunity to be heard when NPS sets rates, and that NPS did not have such procedures in place. The district court declared the rate increases void, enjoined NPS from collecting the increase, and granted LMBOA restitution and damages. The district court later amended this judgment to reflect the second NPS rate increase effective February 1991, and the court limited LMBOA's recovery to restitution because the government had not waived sovereign immunity. The court did not include injunctive or declaratory relief in this amended judgment.
 
 
 9
 After a motion by the plaintiffs and opposition from the government, on December 29, 1993 (after this appeal had been filed), the district court entered an order granting injunctive and declaratory relief as well, nunc pro tunc as of April 22, 1993 (see docket entry 179, not included in Excerpts of Record). This order declared that NPS had violated FOIA by raising rents without publishing NPS-48 and enjoined NPS from raising rents without providing notice and opportunity for comment and without publishing Chapter 48 in the Federal Register.
 
 
 10
 The court did not rule on LMBOA's claim that NPS's application of its comparability rules violated applicable rent setting regulations. The court awarded LMBOA attorney's fees of $34,782 under the Equal Access to Justice Act, finding that NPS's position was not substantially justified.II
 
 
 11
 LMBOA argues as a preliminary matter that the district court's jurisdiction over this case was based in part on 28 U.S.C. § 1346 (the Little Tucker Act), and therefore proper appellate jurisdiction lies exclusively with the Federal Circuit. 28 U.S.C. § 1295 (exclusive Federal Circuit jurisdiction includes "appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1346...."); United States v. Hohri, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). LMBOA argues that its members' due process rights have been violated by the federal government and each member has suffered damages of less than $10,000. Thus, LMBOA claims this action meets the requirements of the Little Tucker Act, and an appeal can be brought only in the Federal Circuit.
 
 
 12
 LMBOA's argument runs counter to well-established case law. The Little Tucker Act, 28 U.S.C. § 1346, provides district courts with concurrent jurisdiction with the United States Court of Federal Claims for claims of under $10,000 for which, with minor exceptions, jurisdiction is available under the Tucker Act, 28 U.S.C. § 1491.[4] To determine whether the Federal Circuit has exclusive jurisdiction of this claim on appeal under the Little Tucker Act, we must determine whether this claim falls within Tucker Act jurisdiction.
 
 
 13
 To determine Tucker Act jurisdiction, "one must always ask ... whether the ... legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." Bowen v. Massachusetts, 487 U.S. 879, 907 n. 42, 108 S.Ct. 2722, 2738 n. 42, 101 L.Ed.2d 749 (1988) (quoting Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)); see also North Star Alaska v. United States, 9 F.3d 1430 (9th Cir.1993) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). The Court in Bowen discussed the Back Pay Act, and statutes that provided compensation to prisoners of war, as examples of laws that trigger Tucker Act jurisdiction. Bowen, 487 U.S. at 907, 108 S.Ct. at 2738-39 (citing United States v. Testan, 424 U.S. 392, 405, 96 S.Ct. 948, 956-57, 47 L.Ed.2d 114 (1976) (Back Pay Act); Bell v. United States, 366 U.S. 393, 398, 81 S.Ct. 1230, 1233, 6 L.Ed.2d 365 (1961) (prisoner of war compensation)). The Tucker Act also confers jurisdiction over claims "concerned solely with rights created within the contractual relationship ... founded ... upon [a] ... contract with the United States." North Star Alaska v. United States, 14 F.3d 36, 37 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994); North Side Lumber Co. v. Block, 753 F.2d 1482, 1486 (9th Cir.), cert. denied, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).
 
 
 14
 The facts of this case cannot support Tucker Act jurisdiction. LMBOA does not have a contract with the United States. Nor does any statute require that the United States pay monetary damages to LMBOA if marina rental rates rise in violation of APA procedural requirements or LMBOA's procedural due process rights.[5] LMBOA cannot rely on its prayer for equitable or declaratory relief to invoke the Little Tucker Act, because the Tucker Act does not provide equitable or declaratory relief except in very limited situations, see 28 U.S.C. § 1491(a)(2) and (3), not present in this case. Without a valid basis for Little Tucker Act jurisdiction, LMBOA cannot successfully argue that the Federal Circuit has exclusive jurisdiction on appeal. See Sharp v. Weinberger, 798 F.2d 1521, 1522 (D.C.Cir.1986).III
 
 
 15
 We also must address whether LMBOA has standing to assert a violation of the APA and FOIA against NPS and SRI. A regulated entity normally has standing to sue an agency to claim that the agency implemented regulations in violation of the APA. e.g., Nguyen v. United States, 824 F.2d 697 (9th Cir.1987) (store owner challenged disqualification from food stamp program based on Agriculture Department's reliance on unpublished regulations in violation of FOIA); Mada-Luna v. Fitzpatrick, 813 F.2d 1006 (9th Cir.1987) (alien claimed INS relied on unpublished operating instructions in violation of APA). However, the aggrieved party need not be a member of the regulated community to have standing to sue for a violation of a publication requirement. Standing requires that a party demonstrate actual injury as a result of the challenged executive action, and that the party be within the "zone of interests" the statute is intended to protect. See Air Courier Conf. v. American Postal Workers Union, 498 U.S. 517, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991); Sierra Club v. Morton, 405 U.S. 727, 738, 92 S.Ct. 1361, 1367-68, 31 L.Ed.2d 636 (1972); Association of Data Processing Service Orgs. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970); Yesler Terrace Community Council v. Cisneros, 37 F.3d 442, 445-46 (9th Cir.1994); North Shore Gas Co. v. EPA, 930 F.2d 1239, 1243 (7th Cir.1991) (citing Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883-84, 110 S.Ct. 3177, 3186-87, 111 L.Ed.2d 695 (1990)). LMBOA can easily demonstrate actual injury from the increase in rental rates. However, whether LMBOA is within the zone of interests protected by the statute requires a closer look.
 
 
 16
 We find that LMBOA, an organization whose members rent slips at NPS-approved rates from a National Park concessioner, makes a claim that is within the zone of interests protected by the underlying statute, here 16 U.S.C. § 20b. Section 20b(c) instructs NPS to evaluate "the reasonableness of a concessioner's rates and charges to the public." 16 U.S.C. § 20b(c). Section 20b's legislative history demonstrates that it was designed to encourage private businesses to provide services in national parks, to better serve the public.
 
 
 17
 The Government now depends heavily, and must continue to depend heavily, on private entrepreneurs to provide visitors to the national park system with necessary facilities and services.... Particularly in the case of the larger parks at which visitors expect to stay overnight, an increased strain is being put on accommodations and other facilities for services to visitors.... [V]isitors expect the sort of accommodations and services that only private capital can be expected to finance.... Enactment of H.R.2091 will help to overcome these financing difficulties...."
 
 
 18
 S.Rep. No. 765, 89th Cong., 1st Sess., reprinted in 1965 U.S.C.C.A.N. 3489, 3490-91 (Report on Concession Policy Act, H.R.2091). The Concession Policy Act was an effort to codify practices followed by NPS since 1950. Id. at 3489. Those policies were adopted in reaction to the drastic disruption in park concessions during World War II. An advisory group appointed by the Secretary of the Interior recommended in 1948 that concessioners be granted certain benefits, but that concessioners must also agree to deliver their services at rates "as reasonable as possible, consistent with the costs of furnishing the services." Letter from Stewart L. Udall to Hon. Wayne N. Aspinall, reprinted in 1965 U.S.C.C.A.N. 3489, 3497. Furthermore, the Senate Committee on Interior and Insular Affairs noted that it had:
 
 
 19
 considerable concern over the apparent trend in national parks to provide facilities that only the wealthy can afford. In this connection, [the Committee] strongly recommends that the National Park Service in the implementation of its concession policies require that concessioners provide all types of facilities at prices the ordinary and middle class user can afford as well as catering to the wealthy.
 
 
 20
 Id. at 3494.
 
 
 21
 Accordingly, in § 20b(c) Congress has instructed NPS to set reasonable rates by comparing the concessioner's rates to rates charges by comparable businesses. By doing so, NPS would allow the concessioner a fair return, without allowing excessive profits. Both the language of the statute and legislative history indicate that Congress intended to protect both concessioners and their customers through this process.
 
 
 22
 However, we caution that this determination that LMBOA is within the "zone of interests" of § 20b does not decide the issue of whether the statute creates a property interest subject to the protection of the Due Process Clause in favor of LMBOA. "[T]he zone of interests test is 'not meant to be particularly demanding.' " Central Ariz. Water Conservation Dist. v. EPA, 990 F.2d 1531, 1538 (9th Cir.) (quoting National Wildlife Fed'n v. Burford, 871 F.2d 849, 852 (9th Cir.1989)), cert. denied, --- U.S. ----, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993). The test to determine whether a statute creates a property interest is much more demanding. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Fidelity Fin. Corp. v. Federal Home Loan Bank, 792 F.2d 1432, 1436 (9th Cir.1986) (property interest created if rule gives party "legitimate claim of entitlement" to benefit), cert. denied, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998.
 
 
 23
 Although LMBOA, as an association of customers of concessions, is within the "zone of interests" of § 20b, it sued on behalf of its members, seeking in part restitution of the rate increase paid by its members. No individual users are plaintiffs in this suit. We hold that LMBOA has standing to sue only for prospective relief on behalf of its members.
 
 
 24
 The three-part test for representational standing was stated in Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
 
 
 25
 [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 26
 Id. at 343, 97 S.Ct. at 2441 (citing Warth v. Seldin, 422 U.S 490, 511, 515, 95 S.Ct. 2197, 2211-12, 2213-14, 45 L.Ed.2d 343 (1974)); see also Pennell v. City of San Jose, 485 U.S. 1, 7 & n. 3, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988).
 
 
 27
 We find that, while LMBOA's members would have standing to sue in their own right, and LMBOA's organizational purpose encompasses an interest in slip rental rates, LMBOA's pursuit of restitution of rental fees to members fails the third part of the Hunt test. As explained in Warth:
 
 
 28
 [T]he damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member ... who claims injury as a result of respondents' practices must be a party to the suit....
 
 
 29
 422 U.S. at 515-16, 95 S.Ct. at 2214; see also Associated General Contractors, Inc. v. Coalition for Economic Equity, 950 F.2d 1401, 1408 (1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992). Here, each LMBOA member's amount of restitution may differ, since each member paid a per foot fee based on length of slip or length of boat, whichever was greater. Boat size, slip size, and amount of use will be different for each member. Awarding restitution to LMBOA on behalf of its members would require individualized proof. Therefore, LMBOA lacks standing to bring a claim for this remedy on behalf of its members. We now turn to the appeal on the merits by NPS, in which it contends that it did not violate FOIA by failing to publish NPS-48 and did not violate the due process rights of LMBOA members by failing to provide notice and an opportunity to be heard before raising their marina rates.
 
 IV
 
 30
 NPS and SRI appealed the district court's holding that NPS's failure to publish NPS-48 in the Federal Register violated FOIA's publication requirements, 5 U.S.C. § 552. The district court's legal conclusion that NPS-48 is a generally applicable rule, regulation or procedure that must be published in the Federal Register, and its subsequent grant of summary judgment are both subject to de novo review. Nguyen v. United States, 824 F.2d 697, 699 (9th Cir.1987).
 
 
 31
 FOIA imposes upon the federal government certain obligations to make material available to the public. Organizational descriptions, rules of procedure, and substantive rules and policy statements of general applicability are governed by § 552(a)(1), which requires that the government publish these materials in the Federal Register. Final agency opinions and orders, interpretations, policy statements not covered by § 552(a)(1), and administrative staff manuals are governed by § 552(a)(2), which requires that the government make these materials available for public inspection and copying. All other agency records (apart from those exempt under § 552(b), concerning, e.g., national security, personnel matters, and trade secrets) are to be made available to any party who requests and reasonably describes the material.
 
 
 32
 "[A]n individual may not raise an FOIA claim based on an agency's failure to publish a rule or regulation, unless he makes an 'initial showing' that 'he was adversely affected by the lack of publication....' " Mada-Luna v. Fitzpatrick, 813 F.2d 1006, 1018 (9th Cir.1987). As a threshold matter, LMBOA has not demonstrated that it was "adversely affected" by the lack of publication, and so cannot state a claim under § 552. Nguyen, 824 F.2d at 700; Mada-Luna, 813 F.2d at 1018 (quoting Zaharakis v. Heckler, 744 F.2d 711, 714 (9th Cir.1984)).
 
 
 33
 We consider three major factors to determine whether NPS's failure to publish NPS-48 adversely affected LMBOA's substantive rights. First, we examine whether NPS-48 changes existing rules, policies or practices. Second, we consider whether NPS-48 deviated from the plain meaning of the statute. Third, we determine whether NPS-48 is binding and narrowly limits administrative discretion. Nguyen, 824 F.2d at 701. On the record before us, it appears that NPS did not change its governing rules and then apply new rules without warning in NPS-48. We also find that NPS-48 does not deviate from the plain meaning of 16 U.S.C. § 20b, because the comparability standard is included in that statute, nor does NPS-48 narrowly limit administrative discretion by providing "interpretation[§ that] will be conclusive in the agency's ultimate decision." Nguyen, 824 F.2d at 701. Therefore, LMBOA was not adversely affected by any failure to publish NPS-48.
 
 
 34
 However, even if LMBOA could demonstrate that NPS's failure to publish NPS-48 adversely affected its substantive rights, we find that NPS-48 is an agency staff manual governed by § 552(a)(2), rather than a statement of substantive rules or policy governed by § 552(a)(1). Accordingly, NPS is not required to publish NPS-48 in the Federal Register, under the exemption provided in § 552(a)(2)(C). NPS has complied with the requirements of FOIA by making NPS-48 available to the public. See Capuano v. NTSB, 843 F.2d 56, 58 (1st Cir.1988) (FAA enforcement manual need not be published), Donovan v. Wollaston Alloys, Inc., 695 F.2d 1, 9-10 (1st Cir.1982) (OSHA inspection program need not be published); Jordan v. U.S. Department of Justice, 591 F.2d 753, 760 (D.C.Cir.1978) (documents discussing use of prosecutorial discretion are not administrative staff manuals), overruled in part on other grounds, Crooker v. BATF, 670 F.2d 1051 (D.C.Cir.1981) (en banc).
 
 V
 
 35
 NPS appeals the district court's ruling that NPS violated LMBOA members' due process rights by not providing notice and a meaningful opportunity to be heard when it raised marina rates. NPS argues that no constitutionally protected liberty or property interest is implicated in this case, as required under Board of Regents v. Roth, 408 U.S. 564, 576-77, 92 S.Ct. 2701, 2708-09, 33 L.Ed.2d 548 (1972); see also Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 843 (9th Cir.1985). Whether such an interest is present is an issue of law this court reviews de novo. Baumann, 754 F.2d at 843.
 
 
 36
 NPS argues that LMBOA members have no property right in continued low marina rates, because LMBOA has not shown a contractual or statutory basis for such an interest. Cf. San Bernardino Physicians' Servs. Medical Group, Inc. v. County of San Bernardino, 825 F.2d 1404, 1407-10 (9th Cir.1987) (contracts); Fidelity Fin. Corp. v. Federal Home Loan Bank, 792 F.2d 1432, 1436 (9th Cir.1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); Baumann, 754 F.2d at 844-45.
 
 
 37
 LMBOA in response asserts that the statutes cover a benefit on the public at large, and LMBOA members are a subset of that public. LMBOA notes that 16 U.S.C. § 460n-3(a) requires that the "Lake Mead National Recreation Area shall be administered by the Secretary of the Interior for general purposes of public recreation, benefit, and use." LMBOA claims that this benefit is protected by procedural due process guarantees.
 
 
 38
 However, to maintain a due process claim, LMBOA must show that existing rules and regulations give its members a legitimate claim of entitlement to low marina rents. See Fidelity Fin. Corp., 792 F.2d at 1436. We hold that general statutory language indicating a governmental purpose to provide parks for the public does not meet this requirement. We also hold that the requirement in § 20b that rates be "reasonable" does not give LMBOA a statutory entitlement to low marina rates.
 
 
 39
 Not only is there no constitutional basis for requiring notice and comment, but the APA does not require notice and comment under these facts. 5 U.S.C. § 553 ("General notice of proposed rule making shall be published ... [e]xcept ... this subsection does not apply ... to interpretive rules, general statements of policy, or rules of agency organization...."); Lincoln v. Vigil, 508 U.S. 182, 197-98, 113 S.Ct. 2024, 2034, 124 L.Ed.2d 101 (1993); see also Mada-Luna, 813 F.2d at 1012. In Mada-Luna, this court found that INS operating instructions fell within the "general statements of policy" exception to the APA's notice and comment provisions provided in § 553(b)(A) and § 553(d)(2). Ibid. This court drew the distinction between directives that guide agency personnel in the exercise of discretionary authority, and those that establish a "binding norm." Id. at 1015. NPS-48 guides personnel in their application of the comparability requirements of 16 U.S.C. § 20b, and therefore fits within the "general statement of policy" exception. Thus, NPS is not required to comply with the APA's notice and comment provisions before applying NPS-48.
 
 VI
 
 40
 In addition, appellant SRI argues that this court lacks jurisdiction over it. SRI notes that the district court's bases for finding for LMBOA included the APA, FOIA, and 16 U.S.C. § 20b. The APA and FOIA apply only to the actions of an authority of the government of the United States, City of Rohnert Park v. Harris, 601 F.2d 1040 (9th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), and 16 U.S.C. § 20b does not provide for a private right of action. Glacier Park Foundation v. Watt, 663 F.2d 882, 884-85 (9th Cir.1981).
 
 
 41
 However, LMBOA is not requesting a remedy based upon any alleged violation of these federal statutes by SRI. Rather, LMBOA's claim against SRI is that SRI illegally collected and retained excess rent in violation of state law. This claim arises out of the same common nucleus of operative fact as its claim against NPS. Since the federal courts have federal question jurisdiction over the NPS claim, we have supplemental jurisdiction over the SRI claim. 28 U.S.C. § 1367. Furthermore, SRI is properly joined as a defendant because SRI profited from an alleged unlawful rental rate increase. In SRI's absence, the court could not fashion complete relief. Joinder is therefore proper under Fed.R.Civ.P. 19. In addition, our exercise of this jurisdiction is desirable to further judicial economy.
 
 
 42
 So, while SRI might be able to raise its reliance on NPS's decisions as a defense to LMBOA's claim, it is within the jurisdiction of the district court, and this court, to consider claims related to SRI in this case. See Donaldson v. United States Department of Labor, 930 F.2d 339, 345 n. 10 (4th Cir.1991) (employer's reliance on agency's erroneous legal ruling is a defense); Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 807 (8th Cir.1979) (veterans may sue employer for violation of Veteran's Reemployment Right Act when employer relied on Labor Department endorsement of employment practices), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); Atlantic Richfield Co. v. Federal Energy Admin., No. C-77-1209-CBR, 1978 WL 926 (N.D.Cal. Feb.15, 1978) (oil company may seek restitution of government-ordered payments made to service station lessee under invalid regulation). Since LMBOA may pursue its unruled-upon claim on remand against NPS for violating its rent-setting regulations, we find that, if LMBOA were to state a proper claim that includes SRI, the court would have jurisdiction over SRI.
 
 VII
 
 43
 We hold LMBOA lacked standing to bring its claim for restitution on behalf of its membership. We also hold that NPS did not violate FOIA's publication requirements or APA's notice and comment provisions in relying upon NPS-48 to approve SRI's proposed rate increases. Accordingly, we vacate the district court's judgment and remand with instructions to dismiss those claims. Since the district court did not rule on the issue of whether NPS acted arbitrarily and capriciously in setting marina rates, we remand for consideration of that matter.
 
 
 44
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Danny J. Boggs, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 Because we hold that LMBOA is not entitled to damages for a violation of FOIA or due process, we need not address LMBOA's cross-appeal regarding sovereign immunity
 
 
 [2]
 16 U.S.C. § 20b(c) reads as follows:
 The reasonableness of a concessioner's rates and charges to the public shall, unless otherwise provided in the contract, be judged primarily by comparison with those current for facilities and services of comparable character under similar conditions, with due consideration for length of season, provision for peakloads, average percentage of occupancy, accessibility, availability and costs of labor and materials, type of patronage, and other factors deemed significant by the Secretary.
 
 
 [3]
 NPS-48 is a 900-page concession management manual containing detailed instructions for how to judge comparability. Only chapter 18 of NPS-48 contains guidelines that address the issues raised by this case
 
 
 [4]
 Congress provided decentralized jurisdiction for these relatively small claims to give claimants the ability to "bring suits in the districts where they and their witnesses reside without subjecting them to the expense and annoyance of litigating in Washington." United States v. Hohri, 482 U.S. 64, 66 n. 1, 107 S.Ct. 2246, 2249 n. 1, 96 L.Ed.2d 51 (1987) (quoting United States v. King, 119 F.Supp. 398, 403 (D.Ala.1954), cited in 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3657 at 284-88 (2d ed.1985))
 
 
 [5]
 Moreover, as we have said, "the Claims Court itself repeatedly has refused jurisdiction over any fifth amendment due process claim, reasoning that the due process clause ... does not mandate compensation by the United States." Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1101 (9th Cir.1990)